1
2
3
4
5

In Propria Persona
Sean A. Roundtree
1080 S. Grand Avenue #C-25
Diamond Bar, CA 91765
602.438.7106/602.592.6401
peaceandrest@live.com

FILED _____ LODGED
RECEIVED _____ COPY

FEB 1 0 2016

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B DEPUTY

6
7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

8
9

SEAN A. ROUNDTREE, individually and
on behalf of his minor children E.N. and S.N.

10

vs.

11
12
13
14
15
16
17
18
19

MICHAEL E. NESBITT and KAREN K.
NESBITT, husband and wife, individual
capacity; DR. ROMAN T. LEWICKY, and
JUANITA T. LEWICKY, husband and wife,
individual capacity; DR. GEORGE L.
HERSHEY, and TERRI LINN HERSHEY,
husband and wife, individual capacity;
NORTHERN ARIZONA ORTHOPEDIC
LIMITED d/b/a/ NORTHERN ARIZONA
ORTHOPEDIC SPORTS MEDICINE, an
Arizona Corporation; COPPER POINT
INSURANCE COMPANIES, an Arizona Corporation

**Civil Action #:**

## CV-16-00369-PHX-ESW

**ORIGINAL COMPLAINT**

**CIVIL RIGHTS**

20
21

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS**

22

**COUNTS I-XVI**

23
24
25
26
27
28

| | |
|---|---|
| Count I | Negligence/Medical Malpractice (Standard Of Care) |
| Count II | Negligence/Medical Malpractice (Informed Consent) |
| Count III | Restatement Of Torts § 457 (Successive Acts Of Negligence) |
| Count IV | Breach Of Fiduciary Duty |
| Count V | Breach Of Contract |
| Count VI | Good Faith And Fair Dealing |
| Count VII | Tortious Interference With Business Relationship |
| Count VIII | NIED/IIED |

## QUESTIONS PRESENTED

- Should the standard of decision of the Arizona discovery rule apply to claims discovered 26-years after the fact, if the Defendants had a duty to the Plaintiff, failed in that duty and took affirmative steps to prevent Plaintiff's discovery of a cause of action?

- Are the Defendants alledged acts consistent with Plaintiff's theories of equitable tolling, equitable estoppel, continuing violation, legal or equitable duty, fraudulent concealment and constructive fraud?

- Are Plaintiff's claims timely and does Plaintiff assert his claims are timely?

- Should the statutes be tolled on all the Plaintiff's claims and are the Defendants estopped from using the statutes of limitations as a plausible defense?

- Does Plaintiff explain why four previous filings in this District, against different defendants (except the indemnity company), involve the same career ending injuries?

- Does Plaintiff explain how and why he discovered his claims so late?

- Does Plaintiff state claims for relief under 42 U.S.C. §§§ 1983, 1985(3) and 1986?

- Does Plaintiff state claims for relief under 28 U.S.C. § 1915(e)(2)?

- Does implementation of the standard of decision, when applied to Plaintiff's facts, logically and reasonably provide fairness to the litigants, socially desirable results and predictability in future cases?

- Do the acts of the Defendants support Plaintiff's demand for punitive damages?

| | |
|---|---|
| Count IX | Loss Of Consortium (Roundtree) And Loss Of Consortium (Minor Children) |
| Count X | 42 U.S.C. § 1983, 14th Amendment, Equal Protection Clause, Substantive And Procedural Due Process Life, Liberty And Property And 1st Amendment Speech, Retaliation |
| | 42 U.S.C. § 1983, Monell, 14th Amendment, Equal Protection Clause, Substantive And Procedural Due Process Life, Liberty And Property |
| Count XI | 42 U.S.C. § 1985(3), Conspiracy To Violate 14th & 1st Amendment Rights |
| Count XII | 42 U.S.C. § 1986, Action For Neglect To Prevent |
| Count XIII | Tortious Fraudulent Concealment and Constructive Fraud |
| Count XIV | A.R.S. 23 § 1023(A), Third Party Harm |
| Count XV | Civil Conspiracy |
| Count XVI | Intentional Or Negligent Misrepresentation |

## PARTIES OF INTEREST

1. Plaintiff, Sean Roundtree is of legal age and a resident of the State of California (Roundtree). At all relevant times, Roundtree is a scholarship student/athlete at Northern Arizona University (*the* University) then shortly thereafter a professional football player with non-defendants Phoenix Arena Sports Limited d/b/a Arizona Rattlers (*the* Rattlers).

2. Defendant Michael E. Nesbitt, ATC and Karen K. Nesbitt, husband and wife, is an individual and a Certified Athletic Trainer licensed to practice within the State of Arizona (Mr. Nesbitt). At all relevant times, Mr. Nesbitt is acting in his individual capacity as University Head Athletic Trainer.

3. Defendant Dr. Roman T. Lewicky, M.D. and Juanita T. Lewicky, husband and wife, is an individual and a physician licensed to practice within the State of Arizona (Dr. Lewicky). At all relevant times, Dr. Lewicky is acting in his individual capacity as University team orthopedic surgeon.

4.  Defendant Dr. George L. Hershey, D.O. and Terri Linn Hershey, husband and wife, is an individual and a physician licensed to practice within the State of Arizona (Dr. Hershey). At all relevant times, Dr. Hershey is acting in his individual capacity as University team physician.

5.  At all relevant times, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey are collectively, (*the* individual Medical Defendants).

6.  Defendant Northern Arizona Orthopedic Limited d/b/a Northern Arizona Orthopedic Sports Medicine (Sports Medicine) is an entity organized and existing in Arizona with its principal place of business at 1485 N. Turquoise Drive, Flagstaff, AZ 86001. At all relevant times, Dr. Lewicky founded and had a place of business at Sports Medicine and provides orthopedic surgical care for University student/athletes.

7.  Defendant Copper Point Insurance Companies d/b/a Copper Point Mutual Insurance Company; Copper Point American Insurance Company; Copper Point Premier Insurance Company; Copper Point National Insurance Company; Copper Point Indemnity Insurance Company; Copper Point Western Insurance Company; Copper Point Casualty Insurance Company; Copper Point General Insurance Company are collectively, (Copper Point), an entity organized and existing in Arizona with its principal place of business at 3030 N. 3rd Street, Phoenix, Arizona 85012-3068. At all relevant times, Copper Point indemnifies Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Sports Medicine as well as the non-defendant Rattlers).

# TABLE OF CONTENTS

Questions Presented.................................................................................1

Plaintiff Demands Trial By Jury On All Claims.................................................1

List Of Counts I-XVI.............................................................................1-2

Parties Of Interest...............................................................................3-4

Table Of Contents...............................................................................5-7

Table Of Authorities...........................................................................8-9

Constitutional And Statutory Authorities..................................................10-11

Statement Of Jurisdiction.....................................................................12

If The Standard Of Decision Means Anything, The Arizona Discovery Rule Should Apply To Claims Discovered 26-Years After The Fact..................................12-13

Roundtree's Statement Of The Facts Is Supported by The Standard Of Decision......13-31

As A Direct And Proximate Result Of The Defendants Acts, Roundtree Suffered Damages Over The Past 26-Years.............................................................31-32

The Standard Of Decision Favors Roundtree...............................................33-36

Causes Of Action................................................................................36-79

Count I, Negligence/Medical Malpractice (Standard Of Care)........................36-43

Mr. Nesbitt, Dr. Lewicky and Dr. Hershey

Alternative Theories

Count II, Negligence/Medical Malpractice (Informed Consent).......................43-46

Mr. Nesbitt, Dr. Lewicky and Dr. Hershey

Count III, Restatement Of Torts § 457 (Successive Acts Of Negligence)..............46-47

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count IV, Breach Of Fiduciary Duty........................................................47-48

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count V, Breach Of Contract ................................................................48-49

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count VI, Good Faith And Fair Dealing.....................................................49-52

Mr. Nesbitt, Dr. Lewicky and Dr. Hershey

Copper Point

Count VII, Tortious Interference With Business Relationship...........................52-53

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count VIII, Negligent Infliction Emotional Distress....................................53-54

Intentional Infliction Emotional Distress....................................54

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count IX, Loss Of Consortium.............................................................54-55

Loss Of Consortium (On behalf of his minor children E.N. & S.N.)......55-56

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count X, 42 U.S.C. § 1983, 14th Amendment Equal Protection Clause, Substantive and Procedural Due Process And 1st Amendment Speech Retaliation.....................56-63

Mr. Nesbitt, Dr. Lewicky and Dr. Hershey

42 U.S.C. § 1983, Monell Claim.......................................................63-71

Copper Point

Count XI, 42 U.S.C. § 1985(3), Conspiracy To Violate...........................................71-73

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count XII, 42 U.S.C. § 1986, Action For Neglect To Prevent...........................73-74

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count XIII, Fraudulent Concealment And Constructive Fraud...........................74-75

Mr. Nesbitt, Dr. Lewicky and Dr. Hershey

Fraudulent Concealment And Constructive Fraud...........................75-77

Copper Point

Count XIV, A.R.S. 23 § 1023(A), Third Party Harm...................................77

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count XV, Civil Conspiracy..................................................................78

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

Count XVI, Intentional Or Negligent Misrepresentation...........................78-79

Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point

If Every Man Has The Right To Decide His Own Destiny, Then The Evil Mind Of The Defendants Can Been Seen In Their Outrageous, Malicious And Sadistic Acts Playing God To Control Roundtree's...............................................................79-80

The Facts Of This Case Compel This Honorable Court's Adoption Of The Standard Of Decision That Favors Roundtree (Closing Argument)...............................80-81

Conclusion...............................................................................81

Certification Of Complaint (Signature).............................................81

# TABLE OF AUTHORITIES

*Acton v. Morrison*, 62 Ariz. 143, 155, 155 P.2d 784 (1945)...............................34

*Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342, 678 P.2d 525, 527 (App.1984)..........................................................................80

*Allgeyer v. Louisiana*, 165 U.S. 578, 17 S. Ct. 427, 41 L. Ed. 832 ([1897])...............57

*Apotex Corp v. Merck & Co., Inc.*, 507 F.3d 1357 (7th Cir. 2007)..........................71

*Barnes v. Lopez*, 544 P.2d 694, 697-98 (Ariz. Ct. App. 1976).............................14

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir.2010).................................58

*Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435, 436 (1968)...........................34

*Doe v. Roe*, 955 P.2d at 961 (Ariz. 1998)...................................................33

*Eitel v. McCool*, 782 F.2d at 1472 (9th Cir. 1986)............................................81

*Estes Corp. v. Indus. Comm'n*, 23 Ariz. App. 370, 376, 533 P.2d 678, 684 (1975)........64

*Galen v. Cnty. of L.A.*, 477 F.3d 652, 659 (9th Cir. 2007)...................................56

*Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995).......................................................................................33

*Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir.1998).........................34

*Jerger v. Rubin*, 471 P.2d 726, 730 (Ariz. 1970)............................................14

*Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1007  (Ariz. Ct. App. 1988).......................................................................................33

*Light v. Chandler Improvement Co.*, 261 P. 969 (Ariz. 1928)...............................14

*McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992).........................35

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. at 690, 98  S.Ct. 2018 (1978)........................................................................................63

*Much v. Sturm, Ruger and Co., Inc.*, 502 F. Supp. at 744 (D.Mont. 1980), *affm'd* 685 F.2d 444 (9th Cir. 1982)..................................................................35

*Nelson v. A.H. Robins Co.*, 515 F. Supp. 623 (N.D.Cal. 1981)..............................35

*In re Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation, Sidney-Vinstein*, 503 F. Supp. 194 (N.D.Cal. 1980)...........................................35

*Peteler v. Robison*, 81 Utah 535, 17 P.2d 244, 249 (1932)..................................34

*Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)......64

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Scott v. Ross,* 140 F.3d 1275, 1284 (9th Cir. 1998)...............................72

*Thornton v. City of St. Helens,* 425 F.3d 1158, 1163-64 (9th Cir. 2005)...................56

*Walk v. Ring,* 202 Ariz. 310, 320 (2002)..........................................35

*Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311, 314 (9th Cir.1983)....72

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 498-500 (2002).....................................34

# CONSTITUTIONAL AND STATUTORY AUTHORITIES

**United States Constitution:**

1st Amendment, Speech…….....…..........………………………………….56

14th Amendment, Equal Protection Clause, Substantive/Procedural Due Process…….56

**United States Code:**

28 U.S.C. § 1332(a)(1)……………………………………………………..12

28 U.S.C. § 1367(a)…………………………………………………………12

28 U.S.C. § 1391(b)(1) & (2)……………………………………………….12

28 U.S.C. § 1915(e)(2)……………………...……………………………….23

42 U.S.C. § 1983…………………………………………………………….33

42 U.S.C. § 1985(3)…………………………………………………………33

42 U.S.C. § 1986………………………………………..…..........…………34

**Restatements:**

Restatement (Second) of Agency § 82………………………………………14

Restatement (Second) of Agency § 101(b)……………………………….….14

Restatement (Third) of Agency § 4.01(1)………………………………….....14

Restatement (Third) of Agency § 4.02 cmt. b………………………………14

Restatement (Third) of Agency § 4.02(2)(b)……………………………….14

Restatement of Torts § 457……………………………….....……………....46

**Arizona Revised Statutes:**

Arizona Revised Statutes § 12-821, General Limitations Public Employee………….…26

Arizona Revised Statutes § 12-821.01, Authorization Of Claim Against Public Entity, Public School Or Public Employee……………………………………………….26

Arizona Revised Statutes § 23-908(A), Injury Reports By Employer And Physician…27

Arizona Revised Statutes § 23-1023, Third Party Harm………....………...……....…..77

**Rules**

Arizona Discovery Rule………………………………………………….…12

A.A.C. R20-5-131(A), Contents of Carriers Claims Files……………………….....27

A.A.C. R20-5-131(D), Inspection and Copying of Carrier Claims Files…....……........26

**Miscellaneous**

Up To Date, Standard of Care for Sesamoid Fractures Of The Foot (2015)…………...14

Northern Arizona Orthopeadic Limited and Northern Arizona Orthopeadic Sports Medicine (http://northazortho.com/services/areas-of-expertise/foot-ankle/) Condition-Sesamoiditis……….…..…………………………………………………………………24

American Academy of Orthopedic Surgeons on Sesamoiditis (http://orthoinfo.aaos.org/topic.cfm?topic=A00164)………………………………….24

Angela Gonzales, "SCF Arizona Changes Name To Copper Point Mutual Insurance Company" *Phoenix Business Journal*, Dec. 4, 2013……………………………....……80

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF JURISDICTION

8.  This Court has complete jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because it involves an amount in controversy that exceeds $75,000.00 and is between residents of different states. This Court has supplemental jurisdiction over Roundtree's state law claims under 28 U.S.C. § 1367(a).

9.  The venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2) because the individual Medical Defendants, Sports Medicine and Copper Point are subject to personal jurisdiction in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

## IF THE STANDARD OF DECISION MEANS ANYTHING, THE ARIZONA DISCOVERY RULE SHOULD APPLY TO CLAIMS DISCOVERED 26-YEARS AFTER THE FACT

10. If the standard of decision means anything, the Arizona discovery rule should apply to claims discovered 26-years after the fact, because Roundtree did not discover the correct "who" to the known "what" of his career ending injuries until Feburary 12, 2015. Roundtree believes the statutes should be tolled through theories of equitable tolling, equitable estoppel, continuing violation and legal or equitable duty as well as under the doctrines of fraudulent concealment or constructive fraud because Defendants Mr. Nesbitt, Dr. Lewicky and Dr. Hershey were under a duty to disclose but remained silent to prevent Roundtree's discovery of a cause of action, which tolls the statutes and estops the individual Medical Defendants from using the statute of limitations as a plausible defense. Shortly thereafter, Defendant Copper Point ratified

the fraudulent conduct of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey with a scheme to limit Roundtree's industrial injury benefit liability and prevent Roundtree's discovery of a cause of action against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey which tolls the statutes and estops Copper Point and the individual Medical Defendants from using the statute of limitations as a plausible defense.

## STATEMENT OF THE FACTS

11. Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Sports Medicine are acting as employees or agents of the University and providing medical services to Roundtree and others within the scope of a servant/master or an agent/principal relationship.

12. Copper Point indemnifies Mr. Nesbitt, Dr. Lewicky and Dr. Hershey and acts in the agent/principal relationship with the individual Medical Defendants to provide medical services to Roundtree and others within the scope of an agent/principal relationship.

13. Copper Point indemnifies the Rattlers and acts in an agent/principal relationship with Rattlers to provide medical services to Roundtree and others within the scope of an agent/principal relationship.

14. Roundtree is an employee of Rattlers and acts within the scope of a servant/master relationship with the Rattlers as a professional football player.

15. Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point are jointly and severally liable through the theories of vicarious liability, respondeat superior, ostensible agency or ratification.[1]

16. On or about August 1989, Roundtree was participating in practice as a scholarship member of the University, Lumberjacks football team. He injured his left foot and was examined by Mr. Nesbitt. Roundtree was outfitted with a "pad" on the practice field and was returned to practice, but Roundtree could not continue due to pain. Mr. Nesbitt immediately advised surgery failing to order the minimum standard of care for conservative care methods i.e. rest and/or molded orthotics.[2]  Moreover, Mr. Nesbitt

---

[1] In Arizona, a principal may be liable for an agent's fraud if the principal either authorized or ratified the fraud. *See Jerger v. Rubin,* 471 P.2d 726, 730 (Ariz. 1970). Arizona courts have expounded this principle of law in the context of misrepresentations by real-estate brokers: It is true that in a broker-negotiated sale, where the misrepresentation is by the broker, the property owner is bound by the broker's misrepresentations only when he was expressly authorized to make such representations or when the owner, after notice of the fraud, insists upon holding the purchaser to his bargain, thereby ratifying the alleged representations of the broker. *Barnes v. Lopez,* 544 P.2d 694, 697-98 (Ariz. Ct. App. 1976) (citing *Jerger,* 471 P.2d 726; *Light v. Chandler Improvement Co.,* 261 P. 969 (Ariz. 1928)).  "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82 (1958); *see also* Restatement (Third) of Agency § 4.01(1) (2006) ("Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."). Ratification recasts the legal relations between the principal and agent as they would have been had the agent acted with actual authority. Restatement (Third) of Agency § 4.02 cmt. b. Ratification is not effective in favor of an agent against a principal when "the principal is obliged to affirm in order to protect his own interests[,]" Restatement (Second) of Agency § 101(b), or when the principal ratifies to avoid a loss. Restatement (Third) of Agency § 4.02(2)(b).

[2] Up To Date, Sesamoid Fractures Of The Foot (2015).

failed to exhaust appropriate conservative care methods i.e., C or O-shaped padding around the sesamoid to unload it, wood-soled shoes or short leg cast.[3]

17. Roundtree had no other health insurance except his University coverage.

18. Shortly thereafter, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey informed Roundtree he "fractured" his left medial sesamoid bone, an important bone for a 20-year old elite athlete aspiring to play in National Football League (NFL).

19. Roundtree does not recall any diagnostic images being taken or reviewing any diagnostic images of his injury with Mr. Nesbitt, Dr. Lewicky, Dr. Hershey or any other health care provider.

20. The individual Medical Defendants failed in their duty to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment for his foot injury. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey failed to advise Roundtree of importance of medial sesamoid bone for an elite athlete or for general daily use. The individual Medical Defendants failed to advise Roundtree of Mr. Nesbitt's failure to appropriately apply or exhaust appropriate conservative care methods. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey failed to advise Roundtree of the risks associated with the procedure. The individual Medical Defendants failed to advise Roundtree that the removal of a "fractured" medial sesamoid bone of a 20-year old elite athlete is an extreme and novel procedure. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey failed to advise Roundtree jointly or severally that they refused to order the appropriate follow-up care, that includes but not limited to: (a) placing Roundtree in a walking cast

---

[3] *See footnote 2.*

following removal of his medial sesamoid bone; (b) refusal to order physical therapy to break up scar tissue, improve flexibility and strengthen the big toe to improve its position and function; (c) refusal to order functional therapy (orthotics) to correct or improve Roundtree's gait and assist the big toe in its position and function; (d) refusal to order progress monitoring over the duration of Roundtree's eligibility (two-years) and; (e) refusal to order a single palatable measure, such as special or different shoes, taping or padding to protect Roundtree's post-operative foot causing tremendous force onto the ball of his foot at his second digit and the untreated progression of a valgus deformity. If Mr. Nesbitt, Dr. Lewicky and Dr. Hershey had provided the proper and complete information neither Roundtree, nor any other reasonable person would have undergone the procedure.

21. Dr. Lewicky performed surgery on Roundtree removing the medial sesamoid bone of his left foot on the recommendation of Mr. Nesbitt and Dr. Hershey breaching the standard of care and disregarding the risk of harm to which the individual Medical Defendants should have been reasonably aware.

22. Following surgery, individual Medical Defendants placed Roundtree purposefully in a walking cast on the recommendation of Mr. Nesbitt and Dr. Hershey, to recover from his foot injury, disregarding the risk of harm to which they should have been reasonably aware. Sometime later that fall Dr. Lewicky removed the cast.

23. Upon information and belief, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey failed to order the appropriate rehabilitative care for Roundtree's great toe, but instead ordered

rehabilitation care for Roundtree's major lower body muscles and joints i.e. quads, hamstrings, calves and ankles.

24. Upon information and belief, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey also assigned a freshmen student/trainer rehabilitative care specialist to execute the Defendants inappropriate rehabilitation order in violation of the policy and procedure of the University or Regent or Arizona Revised Statutes or National Athletic Trainers Association or Arizona Athletic Trainers Association.

25. Even assuming, the individual Medical Defendants ordered the appropriate rehabilitative care and assigned the proper level rehabilitative care specialist to Roundtree. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey failed to order the standard of care molded orthotics which obviates any rehabilitation allegedly done and disregarding the biomechanics of Roundtree's foot to improve or correct his gait and assist the big toe in its position and function in addition to help protect his post-operative foot against additional injury or deformity.

26. The individual Medical Defendants failed to clear Roundtree appropriately to return to participate in football for spring 1990, fall 1990, spring 1991 and fall 1991.[4] What is more, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey returned Roundtree to the identical conditions that caused his injury then failed to monitor Roundtree's progress for the duration of his University eligibility, causing Roundtree to develop and suffer from the untreated progression of a valgus deformity.

---

[4] In 1991, Roundtree went through fall camp and participated in only 3 games but continued to practice with the University team until about week 6.

27. The individual Medical Defendants knew or should have known that failing to provide the appropriate pre-operative care, follow-up care and progress monitoring would cause Roundtree's big toe position and function to deteriorate causing tremendous force to be exerted onto the ball of his foot at his second digit especially when one considers the known violent starting and stopping involved in football. This is the equivalent of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey placing four high performance tires on Roundtree's racecar and failing to balance the tires or check the air pressure, before returning Roundtree's car back to the track. Then failing over and over and over again to correct Roundtree's tire situation during successive pit stops over multiple seasons, while sitting silently in anticipation of his impending crash.

28. The individual Medical Defendants knew or should have known that failing to order the appropriate medical care purposefully for Roundtree's injury threatened his physical, mental and emotional health as well as his collegiate and professional football career and continued their conduct for the duration of Roundtree's eligibility, disregarding the risk of harm to which the individual Medical Defendants should have been reasonably aware.

29. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey's care fell so far below the standard of care, it denied Roundtree the treatment necessary to recovery from his injury, causing Roundtree permanent injury and deformity as well as bringing his professional football career to an end before it even got started.

30. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey did nothing to assure Roundtree's injury healed correctly, specifically that his gait did not deteriorate and his big toe did not lose range of motion, become stiff and rigid, shift into an inappropriate position and fail in its function.

31. In early spring 1992, Roundtree signed with Las Vegas Aces of new Professional Spring Football League, but the league folded after a few weeks of grass practices. Later that summer, Roundtree signed with Hamilton Tiger-Cats of Canadian Football League, but was released after about two-weeks of grass and turf practices.  In the fall of that same year, Roundtree returned to University to finish his degree and participated in flag football on grass. Spring 1993, Roundtree signed with an agent and participated in a professional sports conditioning program on grass and sand. Roundtree did not injure his foot at anytime.

32. About April 1993, Roundtree works out for non-defendant Rattlers running his first 40-yard dash on grass bare foot in 4.40 (Roundtree did not injure his foot). Shortly thereafter the Rattlers signed Roundtree to a contract and later took a pre-season physical and notified the Rattlers of his 1989 injury. The Rattlers medical staff cleared Roundtree to participate in professional football without any restrictions or recommendations even for molded orthotics, failing to provide, recommend and refer

Roundtree for the appropriate diagnostic study, care, consultation and treatment for his injured foot.[5]

33. Sometime in late May 1993, after two-a-day practices, at least two pre-season games, about four regular season games and daily practices all on turf, Roundtree reports tenderness on the ball of his left foot to non-defendant Rattler Head Trainer Matt Anderson, who was also a student/trainer at University during Roundtree's 1989 injury. Anderson failed to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment for his foot injury but instead recommended ice treatment.  Roundtree soaked his foot in the ice tub daily, before and after practice and at home with bags or a bucket.

34. As a direct and proximate result of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey's failure to provide the appropriate medical care to Roundtree's 1989 injury, as described throughout this complaint, Roundtree suffered pain and discomfort in his foot, then subsequently suffered an industrial injury on 6/18/93, necessitating third parties to render further aid causing Roundtree additional injury and excruciating pain and discomfort over the next 22-years. The individual Medical Defendants set Roundtree's foot up, like a pressure-sensitive blast mine, waiting on mounting pressure to cause detonation and that is just what happened.

35. Roundtree had no other medical coverage except for his Rattler medical care.

---

[5] The Rattlers medical staff did not attempt to prevent any further damage to Roundtree's injured foot but reacted to his subsequent industrial injury with a molded orthotic prescription.

36. Roundtree never trained/conditioned, cross-trained, practiced or participated in football or any other activity on his feet without the use of ever increasing doses of steroidal pain killing medicine or pain pills or the pain killing effects of marijuana.

37. On or about September 3, 1993, Roundtree filed a Workman's Compensation claim (the Claim) against non-defendant Rattlers and Defendant Copper Point. Despite Roundtree's attempts to secure counsel, he was forced to appear pro se.[6] Roundtree had no other medical coverage except for his Claim and underwent two surgeries on his foot on 11/12/93 and 7/20/94.

38. On or about April 1996, Roundtree's Claim closes and is awarded 5% disability of the foot, based on Copper Point's scheme to limit liability to only Roundtree's second toe. The Industrial Commission of Arizona awarded Roundtree Supportive Medical Maintenance Benefits (Supportive Benefits) of one office visit and one pair of orthotics per year.

39. From about 1994 to 2001, and again in about 2004 and 2007, Roundtree attempted to return to professional football but was unsuccessful due to foot pain, which required high amounts of pain management. Roundtree began to abuse pills after his 1994 surgery and fearing addiction, liver damage and other health problems transitioned to

---

[6] After reading Copper Point File #93-46568, all prospective attorneys would decline to take the case despite the maximum compensation being paid on the Claim at the time.

marijuana.[7] Although marijuana controlled Roundtree's pain, with ever increasing doses, caused significant cognitive effects.

40. Sometime during summer 1999, after speaking with a former University teammate, who was in the NFL, Roundtree suffered a mental breakdown that required medical attention and separated from society from 1999 to 2002.

41. On or about March 14, 2011, Roundtree suffering from depression and continued foot pain as a direct and proximate result of the acts of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey as well as third parties over the past 22-years Roundtree was diagnosed with advanced degenerative arthritis and was recommended for artificial joint replacement of his first and second digits of the left foot. Roundtree petitioned to reopen his Claim on or about 5/31/11 and his Claim was accepted eventually for medical and compensation benefits (Benefits) on or about 11/12/13. Despite numerous attempts to secure counsel Roundtree was again forced to appear pro se.[8]

42. From about 2011 thru 2014, Roundtree's provides Copper Point with about four written requests via, Copper Point file request form, letter or email for copies of file #93-46568 (the File).[9]/ [10]/ [11] All requests are answered with a disarranged File (each

---

[7] Prior to the conversion Roundtree was orienting himself to a more natural lifestyle following the teachings of Rastafari but as a devote believer in the risen Christ and the Holy Bible.
[8] *See footnote 6.*
[9] Sometime in 2011, 2012, 2013 or 2014, Roundtree provided non-defendant Copper Point claims representative Janine Mills with a File request via U.S. Mail and/or email and sometime later Hensley provided a copy or copies of the File via overnight or U.S. mail sometime later to Roundtree's Diamond Bar, California address and the File was disarranged and each document contained a computerized data strip across the top. Roundtree cannot recall if Hensley charged Roundtree for the copy.

File consisting of progressively more pages than the original 300 pages due to ongoing hearings from 2011 thru 2015). Upon information and belief, the individual records contain computerized data stamps that contain at least two different dates across the top of each page. It is believed each document can be printed in whatever order or even omitted if Copper Point so desires.

43. Sometime later, when the File was ordered chronologically and reviewed, it revealed that the non-defendant Rattlers and Defendant Copper Point acted negligently and such acts lead Roundtree to conclude that they reasonably caused his career ending injuries.[12]

44. Despite Roundtree's attempts to secure counsel, he was forced to appear pro se filing four complaints in this District against non-defendant Rattlers and Defendant Copper Point, from July 2012 thru December 2014 (CV-12-014191-PHX-GMS; CV-12-02044-PHX-JAT;  CV-14-00438-PHX-NVW  and;  CV-14-00929-PHX-DGC), however each lawsuit was dismissed upon screening under 28 U.S.C. § 1915(e)(2).

[10] Sometime in 2011, 2012, 2013 or 2014 Roundtree provided File copy request form to non-defendant unknown female Copper Point front desk employee and sometime later the File was provided at the front desk for pick-up at a cost of about $75.00 and upon pick-up and payment the File was disarranged and each document contained a computerized data strip across the top.

[11] Sometime in 2011, 2012, 2013 or 2014, Roundtree provided non-defendant Copper Point attorney Sharon Hensley with a File request via U.S. Mail and/or email and sometime later Hensley provided a copy or copies of the File via overnight or U.S. mail sometime later to Roundtree's Diamond Bar, California address and the File was disarranged and each document contained a computerized data strip across the top. Roundtree cannot recall if Hensley charged Roundtree for the copy.

[12] The historic behavior of the Rattlers and Copper Point demonstrated in the File shows that the Rattlers and Copper Point had certain obligations to Roundtree and failed to comply with those obligations.

Roundtree continued his review of the File and his claims in preparation for filing a fifth complaint.

45. Sometime in 2014, the File revealed Copper Point failed to provide copies of medical reports of Roundtree's examinations by non-defendant Dr. Richard Jacoby, D.P.M. of Scottsdale Foot Surgeons despite invoices totaling at least $1,933.95. Roundtree documented this in complaint CV-14-00438-PHX-NVW or CV-14-00929-PHX-DGC. Dr. Jacoby had become Roundtree's treating physician sometime in about March 2008 thru about March 2009. Moreover, both Dr. Jacoby and Defendant Copper Point failed in their duty to notify Roundtree of their agent/principal relationship.

46. Sometime in early February 2015, while reading medical malpractice case law, it was revealed that Roundtree's investigation should include his complete injury history.

47. Shortly thereafter Roundtree reviewed medical websites that include, Defendant Northern Arizona Orthopeadic Limited (Limited) d/b/a Sports Medicine and non-defendant American Academy of Orthopedic Surgeons (AAOS) that revealed information on sesamoid removal, sesamoiditis and fractured sesamoids. Dr. Lewicky is the founder of both the Limited and Sports Medicine companies and the companies share the same website. The website does not advise or recommend removing a patient's sesamoids but rather recommends conservative care such as rest, anti-inflammatory medications, special shoes or pads, taping the big toe and in some cases, a leg brace, which is consistent with the standard of care for sesamoid injuries.

Additionally, the AAOS website lists Dr. Lewicky, as Emeritus Fellow and advocates a patient's fractured sesamoid be treated by conservative care methods that includes, time ("it may take several months for discomfort to subside"), stiff-soled shoe or a short leg-fracture brace, taping the joint to limit movement of the great toe, wearing a J-shaped pad around the area of sesamoid to relieve pressure as fracture heals, pain relievers and cushioning pads or other orthotic devices as fracture heals. More importantly, the website states "that removal of sesamoid should not take place until after exhausting conservative care methods."

48. On or about February 12, 2015, Roundtree asks his treating physician Dr. Victor V. Cachia, D.P.M. questions about sesamoiditits, fractured sesamoids, sesamoid removal and post-operative care. Dr. Cachia mentions that sesamoids are rarely removed, if at all, in young people, but mentions that older/more sedentary people are far more likely to have sesamoids removed and, if and when, a sesamoid is removed, it is very important for post-operative physical and functional therapy to follow, no matter the age of the patient or activity level.

49. On or about February 12, 2015, Roundtree identifies the true seat of his industrial and career-ending injuries may lie at the hands of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey and evokes Arizona discovery rule. Roundtree asserts his Complaint and all his claims against the individual Medical Defendants are timely filed and the statutes tolled through the theories of equitable tolling, equitable estoppel, legal or equitable duty as well as under the doctrines of fraudulent concealment or constructive fraud.

50. Roundtree's claims against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey should be equitable tolled because (a) the injury and acts causing Roundtree's 1993 injury were difficult for him to detect and; (b) the injury and acts causing Roundtree's 1989 injury were difficult for him to detect.

51. The individual Medical Defendants breaches of duty requires full disclosure and their concealment to prevent Roundtree's discovery of a cause of action, tolls the statute under the doctrine of fraudulent concealment or constructive fraud and estops the individual Medical Defendants from asserting the statute of limitations as a plausible defense.

52. Prior to discovery of facts, giving rise to a cause of action against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey, Roundtree did not know the individual Medical Defendants committed a wrong or caused him any injury. Roundtree should not be charged with a duty to file a complaint against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey based on information that was unknown to him at the time of his four previous filings. Although Roundtree took 26-years to discover the individual Medical Defendants wronged him, (and Defendant Copper Point ratified there fraudulent conduct with overt acts) Roundtree should not be penalized for failing for even this long period of time to discover the true seat of his troubles.

53. Sometime later, Roundtree consulted with a California attorney, referred by Dr. Cachia however the attorney declined to accept the case based on the statute of

limitations. And despite additional attempts to secure counsel Roundtree was forced once again to appear pro se.

54. On or about April 7, 2015, Roundtree filed a complaint with Federal Bureau of Investigations against non-defendant Rattlers, Defendant Copper Point and former Copper Point employees working at the Commission.

55. Sometime in April and May 2015, Roundtree provided written requests for a copy of the File with Copper Point attorney Christopher S. Norton (Norton). On both occasions Norton failed to provide a File copy within 10-days in violation of A.A.C. R20-5-131(D).

56. On or about May 5, 2015, Roundtree served, the individual Medical Defendants, Sports Medicine, Arizona Board of Regents (Regents), the University President as well as the Arizona Attorney General under A.R.S §§12-821, 12-821.01, with the first, of several, Notice of Claims. No party answered the Notices.

57. On or about June 18, 2015, Roundtree filed a complaint (CV-15-01121-PHX-DLR) against Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Sports Medicine, among others but the complaint was dismissed upon screening under 28 U.S.C. § 1915(e)(2).

58. On or about July 2, 2015, Roundtree discovers through Defendant Copper Point care provider literature and follow-up telephone call to Defendant Sports Medicine that Copper Point indemnifies Mr. Nesbitt, Dr. Lewicky and Dr. Hershey.

59. Later that same day, the File revealed Copper Point failed to provide a copy of non-defendant Dr. Thomas P. McPoil's (University Physical Therapy Department) 1994 or 1995 report of his examination of Roundtree in violation of A.R.S. 23-908(A) and A.A.C. R20-5-131(A). Additionally, McPoil and Defendant Copper Point failed in their duty to inform Roundtree of their agent/principal relationship prior to his examination.

60. Upon information and belief on or about July 5, 2015, the File revealed Copper Point concealed Roundtree's treating physician reports from about 1994 or 1995 thru February 2011 in violation of A.R.S. 23-908(A) and A.A.C. R20-5-131(A). Upon information and belief Copper Point would not have paid the treating physician's invoices associated with Roundtree's Claim if the physicians did not file true, accurate and complete reports of Roundtree's injuries and treatments like those required by the American Medical Association. [13][14][15][16][17][18][19][20][21][22][23]

---

[13] The medical reports of Dr. David G. Harrow, D.P.M. of Cambridge, MA regarding dates 12/2/97 and 2/19/98, which the File contains only Dr. Harrows notes which contain no heading, no phone number, no address and no signature. There are no invoices for Dr. Harrow however, on or about 4/24/98, Dr. Harrow wrote a to whom it may concern demand letter to Copper Point for payment in the amount of $900.00 ($450.00 per foot) for services of orthotic braces on 12/9/97. The document contained a heading of Cambridge Podiatry, 1287 Cambridge Street, Cambridge MA 02139 and his signature.
[14] The physical therapy notes of Beacon Progressive Medical Associates (Beacon) regarding treatments prescribed by Dr. Harrow for dates 6/3/98, 6/8/98 and 6/12/98 contain only the initials SLB. The File does not contain any invoices for Beacon nor does it contain an actual report with the name of a contact person.
[15] The File does contain a true accurate and complete report of Dr. John T. Hester, D.P.M. dated 10/19/98. Dr. Hester reports contains Sports Medicine Brookline, 830 Bolyston Street, Brookline, MA 02167 and his typed signature. However, the File contains no invoices for the services of Dr. Hester.

[16] The File contains page 4 of a four page fax sent to Copper Point by Dr. Alan S. Goldenhar, D.P.M. dated 1/21/04, which seems to be the actual S.O.A.P. note without a heading or address but contains the doctors typed signature. Dr. Goldenhar mentions that Roundtree was last seen on 1/20/2003 for refabrication of his orthotics. Dr. Goldenhar copied non-defendant Copper Point employee C. Lukaszkiewcz of the Final Award Unit, Claims Department. The File contains no invoices for Dr. Goldenhar.

[17] The File contains a detailed report dated 7/22/05 of non-defendant Copper Point agent Dr. Jeffrey A. Copoloff, D.P.M., examination of Roundtree at Southern Desert Medical Center Foot Care located at 2600 E. Sourthern Avenue, Ste 1-3, Tempe, AZ 85282 and contact number 480-839-3274. Roundtree also was examined by Dr. Copoloff sometime in 1996 and fitted for orthotics that Roundtree, however that report is not contained in the File and the File does not contain any invoices for services rendered by Dr. Copoloff.

[18] The File contains podiatric orthopedic screening exam (Screening Exam) of Roundtree dated 2/13/07 by Dr. Andre Benoit of Clinique de Medecine Podiatrique of Montreal, QC, Canada.  Dr. Benoit's Screening Exam is not a written report but a completed form of his initial consultation with Roundtree however the File does not contain any invoices for Dr. Benoit services.

[19] On or about 9/6/07, an unknown Copper Point employee printed a Medical Claim Payments Report (*the*, Report) on Roundtree's Claim. The Report alledgely breaks down Roundtree's Medical payment totals to that date as $19,592.94, Compensation totals as $38,052.93 with a total alledged Benefit payment totaling $57,645.87. The Report allegedly shows 4 payments totaling $993.58 for sevices rendered from 10/25/00 thru 1/27/04 to Roundtree's treating physicians. Specifically, the Report shows alledged payments to Dr. Goldenhar for services on 1/20/03 thru 1/27/04 totaling $675.74 with a break down of services on 1/20/03-1/20/03 for $395.00 paid on 8/12/04, a two payments for services on 1/5/04 thru 1/27/04 for $245.00 and 35.74 paid on 1/30/03 and 7/15/04, respectively. The Report also shows a payment to Dr. Frank J. Santopietr, D.P.M of Brookline, MA for services on 10/25/00 thru 10/25/00 for $317.84 paid on 12/14/00. What is more, the File only contains only the 4th page of a 4 page fax from Dr. Goldenhar dated 1/21/04 and does not contain any reports or invoices for Dr. Santopietr.

[20] On or about 10/8/07, non-defendant Copper Point employee C. Lukaszkiewicz sent a 2 page letter to Dr. Benoit of Montreal that falsely claimed Roundtree's Supportive Benefits award expired as of February 2007, but not closed due to continued use. The form included a 5 question questionnaire that Dr. Benoit answered, however the File only contains the second page of the two page letter. Around this same time, Dr. Benoit terminated services to Roundtree due to Lukaszkiewcz falsely claiming Roundtree's Supportive Benefit award expired in February in 2007.

[21] On or about March 20, 2008, Roundtree filed a written request with the Commission to change his ongoing Supportive Benefit award from Dr. Benoit to Dr. Richard P. Jacoby, D.P.M. and the Commission approved the request effective 3/21/08. Roundtree was forced to return to Arizona to seek treatment for the pain and discomfort of his foot injury

61. About July 2015, Roundtree's Claim is closed.

62. On or about July 18, 2015, Roundtree served Copper Point agent Sara M. Begley under A.R.S §§12-821, 12-821.01 with the first of several, Notice of Claims. Roundtree served Begley again on or about 11/25/15 via U.S. mail and again on or about 12/5/15 via email through attorney Norton. Neither Begley, nor Copper Point answered the Notices.

63. On or about September 27, 2015, Copper Point provided a copy of the File to Roundtree (free of charge) via overnight mail only six-months after his last request in violation of A.R.S. 23-908(A) and A.A.C. R20-5-131(A). Upon opening the box and with out removing the File or disturbing the document order, the File revealed Copper Point disarranged the File again and each document contained the computerized data strip.

64. Copper Point's acts and omissions constitute a continuing violation dating back to 7/6/93, when Dr. Michael J. Kates, D.P.M. a Phoenix Suns and Rattlers Podiatrist examined Roundtree with Dr. Jeffery Copoloff at Dr. Kates place of business and did not co-sign the report generated with Dr. Copoloff. The intent was to have Dr. Kates

---

in Arizona. Roundtree did not have any medical coverage except for his Supportive Benefits.

[22] Although the File does not contain any medical reports for non-defendant Copper Point agent Dr. Richard P. Jacoby, however the File does contain 4 different invoices totaling about $1,933.95 for services rendered between on or about March 2008 and March 2009. Specifically, as follows: (a) Invoice 1, dated 3/19/08 for $808.00; (b) Invoice 2, dated 4/1/08 for $35.00; (c) Invoice 3, dated 8/20/08 for $86.95 and; (d) Invoice 4, dated 3/9/09 for $1,004.00.

[23] The File does not contain a medical report or invoice of Dr. Thomas McPoil 1994 or 1995 exam of Roundtree.

perform IME examinations on Roundtree later, which Dr. Kates did perform on or about 5/31/95 and 12/6/95, then Dr. Kates testified as Copper Point's expert medical witness against Roundtree during the 1996 hearings. This scheme in combination with limiting the injury narrative to Roundtree's second toe only then concealing medical reports to limit Copper Point's liability was specifically designed to destract, limit liability and prevent Roundtree's discovery of a cause of action, against the individual Medical Defendants.

65. Roundtree evokes the Arizona discovery rule against Copper Point and asserts his claims against Copper Point are timely filed and the statutes tolled through theories of equitable tolling, equitable estoppel, continuing violation and legal or equitable duty as well as under the doctrines of fraudulent concealment or constructive fraud.

66. Copper Point's concealment of physician reports in the File and the disarrangment of the File to conceal those material omissions to prevent Roundtree's discovery of a cause of action against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey tolls the statutes and estops Copper Point (as well as the individual Medical Defendants) from asserting the statute of limitations as a plausible defense.

67. Roundtree's claims against Copper Point should be equitable tolled because the injuries and the acts causing his injuries were difficult for him to detect.

68. Roundtree did nothing to cause his own injuries, did not contribute to any negligence of his injuries and did not assume the risk of harm that was done to him.

69. The harm and losses endured by Roundtree were the direct, proximate result of the breaches of duty or deliberate indifference or negligence or misconduct or misrepresentations or concealments or errors and omissions committed by Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point *collectively*, the Defendants.

**AS A DIRECT AND PROXIMATE RESULT OF THE DEFENDANTS ACTS ROUNDTREE HAS SUFFERED DAMAGES OVER THE PAST 26-YEARS**

70. As a direct and proximate result of the Defendants acts Roundtree has suffered damages for the past 26-years that includes but not limited to: (a) permanent injury to his left foot; (b) a limp; (c) untreated progression of associated secondary & adaptive changes that include but not limited to: left ankle, left knee, groin, hips and low back; (d) embarrassment; (e) humiliation; (f) inconvenience; (g) loss of enjoyment of life; (h) anger and rage; (i) extreme anxiety over past, present & future injuries and surgeries; (j) wasted time and effort; (k) shame; (l) extreme anxiety over foot disfigurement and scars; (m) feelings of failure; (n) loss of self-esteem; (o) loss of peace of mind; (p) loss of confidence; (q) loss of reputation; (r) extreme depression and sorrow; (s) past, present and future extreme pain and suffering; (t) loss of ability; (u) past, present & future medical costs; (v) loss of sleep; (w) past, present & future extreme mental, emotional and physical sorrow and distress; (x) past, present & future prescription medicine costs; (y) past, present and future loss of income/wages; (z) past, present and future diminished earning capacity; (aa) third party successive negligence under Restatement of Torts § 457; (bb) shorter life expectancy (cc) extreme anxiety in dealing with Copper Point's 22-years in abusing his Claim

process; (dd) past and present legal costs of lawsuits regarding injuries; (ee) thoughts of suicide; (ff) past and present Claim costs; (gg) extreme anxiety over excessive third party radiation exposure; (hh) left eye-twitch/tick; (ii) night sweats; (jj) loss of fame and recognition; (kk) confusion and bad decision making past 22-years; (ll) unhealthy weight fluctuations; (mm) extreme anxiety over pending artificial joint replacement surgery of first and second digits; (nn) extreme anxiety over long-term effects of numerous third party documented and undocumented steroidal painkilling injections; (oo) extreme frustration and anguish; (pp) poor quality of life due to pain, discomfort and limp; (qq) loss of use of Benefits; (rr) paranoia that Copper Point hired people to kill Roundtree; (ss) extreme anxiety over the effects pain pills, i.e. liver damage; (tt) loss of use of professional football income; (uu) extreme anxiety over effects of numerous third party x-rays and; (vv) other damages which rendered Roundtree no longer able to engage in his chosen profession as a professional football player, severely affecting Roundtree's use and enjoyment of his faculties, chosen vocations, ability to earn a living, lead a normal life, have normal relationships, raise and care for his children and survive requiring a lifetime of physical, mental and emotional therapy.

## THE STANDARD OF DECISION FAVORS ROUNDTREE

71. The standard of decision favors Roundtree because Arizona's discovery rule applies where "the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 898 P.2d 964,

968 (Ariz. 1995). "When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Doe v. Roe,* 955 P.2d at 961 (Ariz. 1998). Under the discovery rule, a cause of action "does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust,* 898 P.2d at 966. Thus, a cause of action accrues if the plaintiff knows (1) that a wrong occurred and caused injury (the "what") and (2) the person or entity at fault (the "who").   *Doe,* 955 P.2d at 961 ("[C]ause of action accrues when plaintiff discovers injury is attributable to particular person's conduct; plaintiff must know both the what and who elements.") (citing *Lawhon v. L.B.J. Institutional Supply, Inc.,* 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988)). Roundtree's states facts giving rise to this cause of action on or about February 12, 2015, therefore he is required to file suit no later than February 12, 2017.  However, because the individual Medical Defendants are state actors the limitations period is limited to one year under A.R.S. §§ 12-821, 12-821.01. Therefore, Roundtree is required to file suit no later than February 12, 2016, and asserts that whether his tort claims are time barred is at most a disputed question of material fact under Arizona's "discovery rule." Roundtree's case should carry greater weight because it involves §§§ 1983, 1985(3) and 1986 claims, and "public policy favoring resolution on the merits is `particularly important in civil rights cases.'" *Hernandez v. City of El Monte,* 138 F.3d 393, 401 (9th Cir.1998).

72. Arizona Courts have held long ago that a patient and a doctor were in a fiduciary

relationship "calling for frank and truthful information from" doctor to patient. *Acton v. Morrison,* 62 Ariz. 143, 155, 155 P.2d 784 (1945). "Fraud practiced to conceal a cause of action will prevent the running of the statute of limitations until its discovery." *Id.* at 144, 155 P.2d at 784. If the doctor "fraudulently concealed from [his patient] the fact of his negligence," the statute of limitations would be tolled. *Id.* (citing *Peteler v. Robison,* 81 Utah 535, 17 P.2d 244, 249 (1932), *disapproved on other grounds by Christiansen v. Rees,* 20 Utah 2d 199, 436 P.2d 435, 436 (1968)). Fraudulent concealment requires: "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 498-500 (2002). A doctor must disclose what he "knew or was chargeable with" knowing. *Morrison* 68 Ariz. at 34-35, 198 P.2d at 595. Constructive fraud arises from a "breach of legal or equitable duty which, irrespective of the moral guilt or intent of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither, actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. Where a relation of trust and confidence exists between two parties so that one of them places peculiar reliance in the trustworthiness of another, the latter is under a duty to make a full and truthful disclosure of all material facts and is liable for misrepresentation or concealment. The breach of this duty gives rise to an action in constructive fraud." Cf. *Walk v. Ring,* 202

Ariz. 310, 320 (2002).   Under Arizona law, a relationship "akin to a fiduciary relationship must exist" for a constructive fraud cause of action to arise. *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992). The type of fraud necessary to estop a party from raising the affirmative defense of the statute of limitations is conduct directed to concealment of a cause of action, which has already arisen, and that this conduct by definition cannot be the same conduct constituting the basis of the claim. *See, e.g., Nelson v. A.H. Robins Co.*, 515 F. Supp. 623 (N.D.Cal. 1981); *In re Northern Dist. of California "Dalkon Shield" IUD Products Liability Litigation, Sidney-Vinstein*, 503 F. Supp. 194 (N.D.Cal. 1980) (fraudulent concealment requires fraud concealing existence of claim, not fraud in the inducement). In general, to toll the statute of limitations the fraud must prevent inquiry, elude investigation or mislead the party who claims the cause of action. *Much v. Sturm, Ruger and Co., Inc.*, 502 F. Supp. at 744 (D.Mont. 1980), *affm'd* 685 F.2d 444 (9th Cir. 1982). The Defendants here, as described throughout this complaint, have done just that, prevented inquiry, eluded investigation and mislead Roundtree.

73. Clearly, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey conspired together and were deliberately indifferent to Roundtree's serious medical needs and acted with deliberate indifference in failing to respond to his serious medical needs, violating his U.S. Constitutional rights to life, liberty and property under the 14th and 1st Amendments exposing Roundtree to third party harm, triggering the danger creation doctrine. Then, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey concealed their deliberate

indifference with silence violating their duty and consequently, Roundtree while playing in just his second season since the individual Medical Defendants inappropriately cleared him to return to participate in football, suffered an industrial injury. Roundtree asserts expert medical testimony may provide a basis from which the causal sequence may be inferred in this case. See *Wisener v. State*, 598 P.2d 511, 513 (Ariz. 1979). What is more, Copper Point ratified the fraudulent conduct of the individual Medical Defendants then concealed medical reports and disarranged the File to prevent Roundtree's detection of the omitted reports and prevent discovery of this cause of action against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey.

## CAUSES OF ACTION

74. Roundtree is entitled to recover damages from Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point jointly and severally based on theories of liability hereinafter enumerated in Counts I thru XVI and under such other theories of liability as may be appropriate based upon the facts as alleged here or as revealed during discovery or as this Honorable Court deems necessary and appropriate based upon the facts presented here or as revealed during discovery.

## COUNT I – MEDICAL MALPRACTICE
### Standard of Care

75. Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-74 above.

### Mr. Nesbitt, Standard Of Care

76. Roundtree alleges in Count I of his Complaint Defendant Mr. Nesbitt, a Certified Athletic Trainer owed a duty to Roundtree to use the due care of a foot specialist in treating his foot injury, Mr. Nesbitt breached that duty, Roundtree had a right to rely on Mr. Nesbitt and did so to his own detriment and Roundtree suffered damages by Mr. Nesbitt's breach of that duty. Mr. Nesbitt's duty arises from a special relationship with Roundtree as a scholarship student/athlete at a state-run University.

77. Roundtree further alleges Mr. Nesbitt's acts in his care and treatment of Roundtree's foot injury, in that he failed to care for and treat his foot injury, in accordance with the standard of medical care or exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which Mr. Nesbitt, belongs, within the State of Arizona acting in the same or similar circumstances.

78. Roundtree further alleges Mr. Nesbitt's acts as described throughout this complaint includes but not limited to: (a) failure to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment; (b) failure to order the appropriate conservative care methods and/or exhaust conservative care methods prior to surgery; (c) failure to follow the requisite standard of care in performing surgery on Roundtree, more specifically Mr. Nesbitt's failure to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment prior to recommending removal of the medial sesamoid bone of a 20-year old elite athlete; (d) failure to order the appropriate follow-up care including but not limited to, placing

Roundtree in a walking casting, failure to order appropriate physical therapy, failure to order functional therapy and failure to order any palatable measures; (e) failure to clear Roundtree appropriately to return to football activities and; (f) failure to monitor Roundtree's progress for the duration of his eligibility.

79. Roundtree further alleges as a direct and proximate result of the acts of Mr. Nesbitt, Roundtree suffered injuries and damages, as described throughout this complaint, that includes but not limited to permanent injury to his left foot and no longer able to engage in his chosen profession as a professional football player.

80. Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

81. Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt and Copper Point on Count I of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Dr. Lewicky, Standard Of Care

82. Roundtree alleges in Count I of his Complaint Defendant Dr. Lewicky, M.D. with a specialty in Sports Medicine owed a duty to Roundtree to use the due care of a foot specialist in treating his foot injury, Dr. Lewicky breached that duty, Roundtree had a right to rely on Dr. Lewicky and did so to his own detriment and Roundtree suffered damages by Dr. Lewicky's breach of that duty. Dr. Lewicky's duty arises from a

1    special relationship with Roundtree as a scholarship student/athlete at a state-run

2    University.

3    83. Roundtree further alleges Dr. Lewicky's acts in his care and treatment of Roundtree's

4    foot injury, in that he failed to care for and treat his foot injury, in accordance with the

5    standard of medical care or exercise that degree of care, skill and learning expected of

6    a reasonable, prudent health care provider in the profession or class to which Dr.

7    Lewicky, belongs, within the State of Arizona acting in the same or similar

8    circumstances.

9

10

11   84. Roundtree further alleges Dr. Lewicky's acts as described throughout this complaint

12   includes but not limited to: (a) failure to provide, recommend and refer Roundtree for

13   appropriate diagnostic study, care, consultation and treatment; (b) failure to order the

14   appropriate conservative care methods and/or exhaust conservative care methods prior

15   to surgery; (c) failure to follow the requisite standard of care in performing surgery on

16   Roundtree, more specifically Dr. Lewicky acquiesced to Mr. Nesbitt and Dr.

17   Hershey's failure to provide, recommend and refer Roundtree for appropriate

18   diagnostic study, care, consultation and treatment prior to recommending removal of

19   the medial sesamoid bone of a 20-year old elite athlete and removed the medial

20   sesamoid bone of a 20-year old elite athlete; (d) failure to order the appropriate

21   follow-up care including but not limited to, placing Roundtree in a walking casting,

22   failure to order appropriate physical therapy, failure to order functional therapy and

23   failure to order any palatable measures; (e) failure to clear Roundtree appropriately to

24

25

26

27

28

return to football activities and; (f) failure to monitor Roundtree's progress for the duration of his eligibility.

85. Roundtree further alleges as a direct and proximate result of the acts of Dr. Lewicky, Roundtree suffered injuries and damages, as described throughout this complaint, that includes but not limited to permanent injury to his left foot and no longer able to engage in his chosen profession as a professional football player.

86. Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

87. Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Dr. Lewicky, Sports Medicine and Copper Point on Count I of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Dr. Hershey, Standard Of Care

88. Roundtree alleges in Count I of his Complaint Defendant Dr. Hershey, D.O. a general practitioner owed a duty to Roundtree to use the due care of a foot specialist in treating his foot injury, Dr. Hershey breached that duty, Roundtree had a right to rely on Dr. Hershey and did so to his own detriment and Roundtree suffered damages by Dr. Hershey's breach of that duty. Dr. Hershey's duty arises from a special relationship with Roundtree as a scholarship student/athlete at a state-run University.

89. Roundtree further alleges Dr. Hershey's acts in his care and treatment of Roundtree's foot injury, in that he failed to care for and treat his foot injury, in accordance with the standard of medical care or exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which Dr. Hershey, belongs, within the State of Arizona acting in the same or similar circumstances.

90. Roundtree further alleges Dr. Hershey's acts as described throughout this complaint includes but not limited to: (a) failure to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment; (b) failure to order the appropriate conservative care methods and/or exhaust conservative care methods prior to surgery; (c) failure to follow the requisite standard of care in performing surgery on Roundtree, more specifically more specifically Dr. Hershey's failure to provide, recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment prior to recommending removal of the medial sesamoid bone of a 20-year old elite athlete; (d) failure to order the appropriate follow-up care including but not limited to, placing Roundtree in a walking casting, failure to order appropriate physical therapy, failure to order functional therapy and failure to order any palatable measures; (e) failure to clear Roundtree appropriately to return to football activities and; (f) failure to monitor Roundtree's progress for the duration of his eligibility.

91. Roundtree further alleges as a direct and proximate result of the acts of Dr. Hershey, Roundtree suffered injuries and damages, as described throughout this complaint, that

includes but not limited to permanent injury to his left foot and no longer able to engage in his chosen profession as a professional football player.

92. Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

93. Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Dr. Hershey and Copper Point on Count I of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**Alternatively Theories**

94. Alternatively, Roundtree alleges in Count I of his Complaint Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point increased Roundtree's risk of harm and jointly and severally deprived Roundtree of a significant chance at a better recovery from his injury.

95. Alternatively, Roundtree alleges in Count I of his Complaint Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point failed to act jointly and severally when they knew or had reason to know facts that would lead a reasonable person to realize that their individual conduct not only created an unreasonable risk of bodily harm to Roundtree but also involved a high probability that substantial harm would result to which the Defendants should have been reasonably aware.

96. Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

97. Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count I of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

## COUNT II - MEDICAL MALPRACTICE
### Lack of Informed Consent

98. Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-97 above.

### Mr. Nesbitt, Lack Of Informed Consent

99. Roundtree alleges in Count II of his Complaint Defendant Mr. Nesbitt had a duty to use the due care of a foot specialist and disclose to Roundtree, in a reasonable manner, all significant medical information he possessed or reasonably should have possessed that is material to an intelligent decision by Roundtree whether to undergo the proposed procedure and Mr. Nesbitt failed to disclose that information.

100. Roundtree further alleges Mr. Nesbitt's failed to disclose the facts set forth in ¶20, which materialized when Roundtree suffered foot pain and a subsequent industrial injury to his foot in just his second full season since Mr. Nesbitt medically cleared Roundtree to return to football from his 1989 injury.

101.   Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

102.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt and Copper Point on Count II of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Dr. Lewicky, Lack Of Informed Consent

103.   Roundtree alleges in Count II of his Complaint Defendant Dr. Lewicky had a duty to use the due care of a foot specialist and disclose to Roundtree, in a reasonable manner, all significant medical information he possessed or reasonably should have possessed that is material to an intelligent decision by Roundtree whether to undergo the proposed procedure and Dr. Lewicky failed to disclose that information.

104.   Roundtree further alleges Dr. Lewicky's failed to disclose the facts set forth in ¶20, which materialized when Roundtree suffered foot pain and a subsequent industrial injury to his foot in just his second full season since Dr. Lewicky medically cleared Roundtree to return to football from his 1989 injury

105.   Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

106.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Dr. Lewicky, Sports Medicine and Copper Point on Count II of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Dr. Hershey, Lack Of Informed Consent

107.    Roundtree alleges in Count II of his Complaint Defendant Dr. Hershey had a duty to use the due care of a foot specialist and disclose to Roundtree, in a reasonable manner, all significant medical information he possessed or reasonably should have possessed that is material to an intelligent decision, by Roundtree whether to undergo the proposed procedure and Dr. Hershey failed to disclose that information.

108.    Roundtree further alleges Dr. Hershey's failed to disclose the facts set forth in ¶20, which materialized when Roundtree suffered foot pain and a subsequent industrial injury to his foot in just his second full season since Dr. Hershey medically cleared Roundtree to return to football from his 1989 injury.

109.    Roundtree further alleges the need for expert medical witness testimony that will yield additional facts sufficient to constitute his cause of action.

110.    Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Dr. Hershey and Copper Point on Count II of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**COUNT – III RESTATEMENT OF TORTS § 457, SUCCESSIVE NEGLIGENCE**

111.    Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-110 above.

112.    Roundtree alleges in Count III of his Complaint as a direct and proximate result of the acts of Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, Roundtree suffered foot pain and a subsequent industrial injury requiring third parties to render Roundtree aid causing additional injury and significant pain over the past 22-years that includes but not limited to: (a) failure to properly examine and diagnose and treat Roundtree's medical condition; (b) failure to recommend and refer Roundtree for appropriate diagnostic study, care, consultation and treatment; (c) failure to properly recommend and provide the appropriate follow-up care to injuries; (d) failure to properly monitor progress of Roundtree's injuries; (e) failure to diagnose and treat Roundtree untreated progression of injuries; (f)  failure to follow standard of medical care within the community in performing surgery on Roundtree; (g) failure to properly advise Roundtree of risks associated with surgery; (h) surgical correction of injuries; (i) failure to diagnose, treat or refer for consultation for associated secondary and adaptive changes that include but not limited to, left knee, left ankle, hips and low back; (j) failure to diagnose, treat or refer for consultation for degenerative arthritis of first and second digits requiring joint replacement surgery; (k) untreated progression of associated secondary and adaptive changes; (l) untreated progression of degenerative arthritis of first and second digits requiring joint replacement surgery;

(m) other acts of successive negligence and; (n) other damages that includes permanent left foot injury and deformity as well as no longer able to engage in his chosen profession as a professional football player.

113.   Roundtree further alleges discovery of the File and expert medical witness testimony will yield additional facts sufficient to constitute his cause of action.

114.   Roundtree demands prejudgment interest on this claim since May 1993.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count III of his Complaint, in an amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

## COUNT IV – BREACH OF FIDUCARY DUTY

115.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-114 above.

116.   Roundtree alleges in Count IV of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky and Dr. Hershey owed Roundtree a duty and breached their duty purposefully causing Roundtree to suffer damages.

117.   Roundtree further alleges non-defendant Copper Point employees owed a duty to Roundtree, non-defendant Copper Point employees breached that duty, Roundtree had a right to rely on non-defendant Copper Point employees and Roundtree did so to his

own detriment and Roundtree was damaged directly and proximately by non-defendant Copper Point employees breaches of that duty.

118.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count IV of his Complaint, in the amount of $25.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief that this Honorable Court deems necessary and appropriate.

## COUNT V – BREACH OF CONTRACT

119.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-118 above.

### Mr. Nesbitt, Dr. Lewicky, Dr. Hershey And Copper Point
### Breach Of Contract

120.   Roundtree alleges in Count V of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, violated Roundtree's scholarship agreement with the University and as a result Roundtree suffered damages.

121.   Roundtree further alleges he has the right to seek relief against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, jointly and severally.

122.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count V of his Complaint, in the amount of $25.975M to justly compensate him for his damages, together with interest, plus costs

and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate

### Copper Point
### Breach Of Contract

123.    Roundtree alleges in Count V of his Complaint Defendant Copper Point violated the Workmen's Compensation Act (the Act) or Roundtree's Claim and as a result Roundtree suffered damages.

124.    Roundtree further alleges he has the right to seek relief against Copper Point.

125.    Roundtree demands prejudgment interest on this claim since July 7, 1993.

Wherefore, Sean Roundtree demands judgment against Copper Point on Count V of his Complaint, in the amount of $25.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief that this Honorable Court deems necessary and appropriate.

### COUNT VI – GOOD FAITH & FAIR DEALING

126.    Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-125 above.

### Mr. Nesbitt, Dr. Lewicky And Dr. Hershey
### Good Faith & Fair Dealing

127.    Roundtree alleges in Count VI of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, impaired Roundtree's right to receive the

1  expected reasonable benefits of Roundtree's scholarship including but not limited to

2  medical care and as a result Roundtree suffered damages.[24]

3  128.   Roundtree demands prejudgment interest on this claim since August 1989.

4
5  Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr.

6  Hershey, Sports Medicine and Copper Point on Count VI of his Complaint, in the amount

7  of $125.975M to justly compensate him for his damages, together with interest, plus costs

8
9  and attorney's fees of this action and for any other further relief this Honorable Court

10  deems necessary and appropriate.

11
12
### Copper Point
### Good Faith & Fair Dealing

13  129.   Roundtree alleges in Count VI of his Complaint non-defendant Copper Point

14
15  employees violated Roundtree rights as late as 9/27/15, constituting a continuing

16  violation impairing Roundtree's right to receive the expected reasonable benefits of

17  the Act or his Claim dating back to 7/7/93, that includes but not limited to: (a)

18
19  unreasonably delayed, underpaid or failed to pay Benefits; (b) failing to acknowledge

20  and act with reasonableness upon communications with respect to claims arising

21  under policies; (c) refusing to pay claims without conducting a reasonable

22
23  investigation based upon all available information; (d) failing to affirm or deny

24  coverage within a reasonable time after approval; (e) not attempting in good faith to

25  effectuate prompt, fair and equitable settlements of claims in which liability has

26  become reasonably clear; (f) compelling insured's to institute litigation to recover

27
---
[24] As state medical officers that breached their duty, Roundtree can argue credibly that this Complaint is a mandamus action.

28

benefits due under the policy by offering substantially less than the amount due and owing; (g) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled; (h) failing to promptly settle claims, where liability has become reasonably clear; (i) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; (j) institutes proceedings or interposes a defense that is not well grounded in fact nor warranted by existing law or a good faith argument for extension, modification or reversal of existing law; (k) unreasonably interferes with right to choose attending physician; (l) failing to reimburse travel, medical bills and prescriptions expenses; (m) failure to pay medical, surgical and hospital benefits for reasonable and necessary diagnostic or investigative tests under A.R.S. § 23-1061(H); (n) failure to issue a true, accurate chronological copies of the File; (o) failure to issue timely copies of the File; (p) altering medical records and;[25] (q) loss of use of Benefits and as a result Roundtree suffered damages.

130.   Roundtree further alleges discovery of the File and expert medical and insurance witness testimony will yield additional facts sufficient to constitute his cause of action.

---

[25] Copper Point tampered with Dr. Edward P. McDermott's medical report of his examination of Roundtree dated 4/6/94. The report has been redacted at page 2 ¶7, specifically deleting Dr. McDermott's percentage of disability relating to Roundtree's industrial injury, most likely to control the injury narrative and limit liability. The Report was directed to Dr. Richard Emerson of the Rattler medical staff located in Phoenix, Arizona.

131.   Roundtree demands prejudgment interest on this claim since July 7, 1993.

Wherefore, Sean Roundtree demands judgment against Copper Point on Count VI of his Complaint, in the amount of $226.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief that this Honorable Court deems necessary and appropriate.

## COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

132.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-131 above.

133.   Roundtree alleges in Count VII of his Complaint Roundtree had a business expectancy with professional football and the NFL, Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, knew Roundtree had a expectancy with professional football and the NFL and Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point improperly interfered with that expectancy causing its termination and damages.

134.   Roundtree further alleges as a direct and proximate result of the acts of Mr. Nesbitt, Dr. Lewicky Dr. Hershey and Copper Point, plainly took away Roundtree's chance to continue and advance as a professional football player.

135.   Roundtree further alleges expert medical and football witness testimony will yield additional facts sufficient to constitute his cause of action.

136.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count VII of his Complaint, in the amount of $75.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief that this Honorable Court deems necessary and appropriate.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

137.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-136 above.

### Negligent Infliction Of Emotional Distress

138.   Roundtree alleges in Count VIII of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, jointly and severally knew or should have known that their conduct, involved an unreasonable risk of causing Roundtree distress and from facts known to the Defendants, they jointly and severally knew or should have known, distress, if it were caused, might result in mental illness or bodily harm to Roundtree and as a direct and proximate result of the acts of the Defendants Roundtree suffered mental illness and bodily harm.

139.   Roundtree further alleges expert medical and psychological witness testimony will yield additional facts sufficient to constitute his cause of action.

140.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count VIII of his Complaint, in the

amount of $350.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Intentional Infliction Of Emotional Distress

141.   Roundtree alleges in Count VIII of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, jointly and severally engaged in extreme and outrageous conduct and intended to cause or recklessly disregarded the near certainty that emotional distress would arise from their conduct and as a direct and proximate result of Defendants extreme and outrageous conduct Roundtree suffered extreme emotional distress and sorrow.

142.   Roundtree further alleges expert psychological witness testimony will yield additional facts sufficient to constitute his cause of action.

143.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count VIII of his Complaint, in the amount of $350.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### COUNT IX – LOSS OF CONSORTIUM

144.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-143 above.

**Loss of Consortium**

145.   Roundtree alleges in Count IX of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point have affected, prevented, damaged and caused Roundtree a degraded familial relationship and deprived him from releasing his care, protection, support, services, society, advice, companionship, love, affection and guidance on Roundtree's grandson, I.P; son, E.N.; daughters, Shayla (I.P.'s mother), Moriah and S.N.; Mother (Deceased 1998); sisters, Raven, Sage, Sheila and Leatha; brothers, Brady and Louie; nieces, Adriana, Whitney, Brittany, Amanda and C.R.; nephews, Aaron, Danny, Major, C.J., D.R. and A.R. for the past 22-years.

146.   Roundtree demands prejudgment interest on this claim since August 1989

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count IX of his Complaint, in the amount of $22.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**Loss of Consortium On Behalf Of His Minor Children**

147.   Roundtree alleges in Count IX of his Complaint on behalf of his minor children E.N. and S.N. that Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point have affected, prevented, damaged and caused Roundtree's minor children a degraded familial relationship and deprived Roundtree from releasing his care, protection, support, services, society, advice, companionship, love, affection and

guidance on Roundtree's minor son, E.N. since his 2011 birth and Roundtree's daughter, S.N. since her 2014 birth during the most crucial time in their lives and development.

148. Roundtree demands prejudgment interest on this claim since December 2011 for E.N. and May 2014 for S.N.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count IX of his Complaint, in the amount of $3.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

## COUNT X - 42 U.S.C. § 1983,
### 14TH AMENDMENT EQUAL PROTECTION CLAUSE SUBSTANTAIVE AND PROCEDURAL DUE PROCESS AND 1ST AMENDMENT SPEECH RETALIATION

149. Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-148 above.

### 42 U.S.C. § 1983

150. To prevail on a § 1983 claim, "a plaintiff must show that `(1) acts by the defendants (2) under color of state law (3) deprived [him] of federal rights, privileges or immunities [and] (4) caused [him] damage.'" *Thornton v. City of St. Helens,* 425 F.3d 1158, 1163-64 (9th Cir. 2005) (alterations in original). A "public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights." *Galen v. Cnty. of L.A.,* 477 F.3d 652, 659 (9th Cir. 2007).

### Mr. Nesbitt, Dr. Lewicky And Dr. Hershey
### 42 U.S.C. § 1983, Claim

151.   Roundtree alleges in Count X of his Complaint state officers Mr. Nesbitt, Dr. Lewicky and Dr. Hershey acting under color of state law through their own individual actions deprived Roundtree of his of U.S. Constitutional rights to substantive and procedural due process rights to life (bodily integrity), liberty (free from intentional injury to be free in the enjoyment of all his faculties) and property (body as service/negotiable instrument as an elite collegiate/professional athlete),[26] under the equal protection clause of the 14th Amendment as well as violated his 1st Amendment right to free speech[27] in violation of 42 U.S.C. § 1983, that is shocking to the conscious.

152.   Roundtree further alleges he has a fundamental right to life, liberty and property, triggering the "danger creation" doctrine.

153.   Roundtree further alleges he is a "class of one" and is entitled to and has a legitimate claim of entitlement to appropriate medical care, through a special relationship as a scholarship student/athlete under the care and protection of the

[26] The right to be free from unlawful detention has been interpreted to mean not only that the government may not deprive a person of liberty without Due Process of Law, but also that a citizen has a right "to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his living by any lawful calling; and to pursue any livelihood or vocation" (*Allgeyer v. Louisiana*, 165 U.S. 578, 17 S. Ct. 427, 41 L. Ed. 832 [1897]).

[27] "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir.2010).

individual Medical Defendants under the polices and procedures of the University or Regents or A.R.S. or the Arizona Constitution triggering the "danger creation" doctrine.

154.   Roundtree further alleges conduct of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey was motivated by invidiously discriminatory animus toward Roundtree.

155.   Roundtree further alleges that numerous times during the Fall and Spring of 1987 and 1988 as well as Spring 1989, Roundtree had recurring intense conversations with Mr. Nesbitt over repetitive shoulder injuries and Roundtree's desire for new or different shoulder pads to which Mr. Nesbitt disputed and denied. Roundtree informed Mr. Nesbitt several times that he never injured his shoulders in high school with Donzi shoulder pads. Sometime later Roundtree's mother became involved and she contacted Mr. Nesbitt via telephone eliciting a response from Mr. Nesbitt to Roundtree, to the effect of "we hit harder in college." Roundtree responded "but I am the one doing the hitting."  As a result Mr. Nesbitt became very unfriendly and confrontational with Roundtree, making it hard for Roundtree to work with Mr. Nesbitt. Mr. Nesbitt avoided Roundtree and Roundtree avoided Mr. Nesbitt. And despite Roundtree's continued shoulder problems, Mr. Nesbitt did not provide Roundtree with new or different pads until spring 1990, when new equipment was purchased for the entire University team.

156.   Roundtree further alleges as a result by the very next semester in August 1989, Mr. Nesbitt had conspired with Dr. Lewicky and Dr. Hershey to be deliberately

1
2
3
4
5
6

indifferent to Roundtree's serious medical needs or act with deliberate indifference in failing to respond to Roundtree's serious medical needs. Disregarding the risk of harm to a known or obvious danger of which the individual Medical Defendants should have been reasonably aware and that would chill a person of ordinary firmness from continuing to engage in the protected activity.

7
8
9
10
11
12
13
14
15
16
17

157.   Roundtree further alleges Mr. Nesbitt, Dr. Lewicky and Dr. Hershey, owed a duty to Roundtree to use the due care of a foot specialist in treating his foot injury, Mr. Nesbitt, Dr. Lewicky and Dr. Hershey breached that duty, Roundtree had a right to rely on Mr. Nesbitt, Dr. Lewicky and Dr. Hershey and Roundtree did so to his own detriment and Roundtree suffered damages by Mr. Nesbitt, Dr. Lewicky and Dr. Hershey's breach of that duty.  Mr. Nesbitt, Dr. Lewicky and Dr. Hershey duty arises from a special relationship with Roundtree as a scholarship student/athlete at a state-run University.

18
19
20
21
22
23
24
25
26
27
28

158.   Roundtree further alleges the individual Medical Defendants refused to provide the appropriate medical care to his injury and created the actual particularized harm that Roundtree would not otherwise have faced violating his U.S. Constitutional rights. As a direct and proximate result Roundtree suffered an industrial injury and excruciating pain requiring third parties to render him aid causing additional damages that include but not limited to: (a) permanent injury to his left foot; (b) a limp; (c) untreated progression of associated secondary & adaptive changes that include but not limited to: left ankle, left knee, groin, hips and low back; (d) embarrassment; (e)

humiliation; (f) inconvenience; (g) loss of enjoyment of life; (h) anger and rage; (i) extreme anxiety over past, present & future injuries and surgeries; (j) wasted time and effort; (k) shame; (l) extreme anxiety over foot disfigurement and scars; (m) feelings of failure; (n) loss of self-esteem; (o) loss of peace of mind; (p) loss of confidence; (q) loss of reputation; (r) extreme depression and sorrow; (s) past, present and future extreme pain and suffering; (t) loss of ability; (u) past, present & future medical costs; (v) loss of sleep; (w) past, present & future extreme mental, emotional and physical sorrow and distress; (x) past, present & future prescription medicine costs; (y) past, present and future loss of income/wages; (z) past, present and future diminished earning capacity; (aa) third party successive negligence under Restatement of Torts § 457; (bb) shorter life expectancy (cc) extreme anxiety in dealing with Copper Point's 22-years in abusing his Claim process; (dd) past and present legal costs of lawsuits regarding injuries; (ee) thoughts of suicide; (ff) past and present Claim costs; (gg) extreme anxiety over excessive third party radiation exposure; (hh) left eye-twitch/tick; (ii) night sweats; (jj) loss of fame and recognition; (kk) confusion and bad decision making past 22-years; (ll) unhealthy weight fluctuations; (mm) extreme anxiety over pending artificial joint replacement surgery of first and second digits; (nn) extreme anxiety over long-term effects of numerous third party documented and undocumented steroidal painkilling injections; (oo) extreme frustration and anguish; (pp) poor quality of life due to pain, discomfort and limp; (qq) loss of use of Benefits; (rr) paranoia that Copper Point hired people to kill Roundtree; (ss) extreme anxiety

over the effects pain pills, i.e. liver damage; (tt) loss of use of professional football income; (uu) extreme anxiety over effects of numerous third party x-rays and; (vv) other damages which rendered Roundtree no longer able to engage in his chosen profession as a professional football player, severely affecting Roundtree's use and enjoyment of his faculties, chosen vocations, ability to earn a living, lead a normal life, have normal relationships, raise and care for his children and survive requiring a lifetime of physical, mental and emotional therapy.

159.   Roundtree further alleges Mr. Nesbitt, Dr. Lewicky and Dr. Hershey, provided other similarly situated student/athletes who suffered injuries at University requiring surgical intervention, with the appropriate medical care and treatment.

160.   Roundtree further alleges the individual Medical Defendants acting in their capacity as state medical officers cannot provide a rational basis for treating Roundtree differently, nor can they provide a rational basis for the difference in medical care.

161.   Roundtree further alleges qualified immunity cannot shield Mr. Nesbitt, Dr. Lewicky and Dr. Hershey from liability because their conduct was to deprive Roundtree purposefully of his substantive and procedural due process rights to life, liberty and property under the equal protection clause of 14th Amendment as well as violate Roundtree's 1st Amendment right to free speech and those rights were plainly established at the time of the individual Medical Defendants violations.

162.    Roundtree further alleges equitable tolling doctrine applies to this claim. First, Roundtree asserts the individual Medical Defendants acted to injure him, purposefully breaching their duty then concealed the breaches with silence to prevent Roundtree's discovery of a cause of action within the limitations period. Second, Roundtree can argue credibly that the extraordinary circumstances of Mr. Nesbitt, Dr. Lewicky and Dr. Hershey orchestrating a malicious campaign of purposeful irrationally different treatment or deliberate indifference to Roundtree's serious medical needs or deliberate indifference in responding to Roundtree's serious medical needs. Mr. Nesbitt, Dr. Lewicky and Dr. Hershey's intent in removing Roundtree's medial sesamoid bone was to cause him permanent injury and end his football career. The individual Medical Defendants then concealed facts to prevent Roundtree's discovery of a cause of action were all beyond his control. The following additional significant circumstances were also beyond Roundtree's control: (a) not knowing the individual Medical Defendants and non-defendant Rattlers were all indemnified by Copper Point; (b) Copper Point concealing medical reports in the File; (c) Copper Point disarranging the File; (d) the injury and acts causing the 1993 injury were difficult to detect; (e) the injury and acts causing the 1989 injury were difficult to detect; (f) the deliberate indifference of the Rattlers and Defendant Copper Point found in the File, which Roundtree reasonably assumed the Rattlers and Copper Point caused his career ending injuries when in all actuality they attempted to render aid (although

deliberately indifferent aid) to an already permanently injured foot and; (g) Roundtree acting pro se since 1993 on his Claim and in this District since 2012.

163.   Roundtree demands prejudgment interest on this claim since August 1989.

164.   Roundtree demands punitive damages for deprivations of his U.S. Constitutional rights.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky and Dr. Hershey on Count X of his Complaint, in the amount of $500.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**Copper Point**
**42 U.S.C. § 1983, Monell Claim**
**14th Amendment Equal Protection Clause Substantive And Procedural Due Process**

165.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-164 above.

166.   Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. at 690, 98 S.Ct. 2018 (1978). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1) that the plaintiff possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *See Plumeau v. School Dist. #*

*40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir.1997) (internal citations and quotation marks omitted).

167.  Roundtree alleges in Count X of his Complaint non-defendant Copper Point employees that includes but not limited to, Dr. Kates, Lynell Brown,[28] Lukaszkiewicz, Janine Mills, Sharon Hensley, Lucille Moreno[29] and Christopher Norton, acting under color of state law and under the existence of a widespread practice of bad faith, that,

---

[28] On or about September 7, 1993, Roundtree called Copper Point claims representative Lynell Brown from Laguna Niguel, California, to chose podiatrist Dr. Victor V. Cachia, D.P.M. as his treating physician. Brown misrepresented that Roundtree could not chose an out of state doctor as his treating physician, stating "no out of state doctors will be approved by this carrier." ("A claimant typically has an unrestricted right to select a treating physician" *See Estes Corp. v. Indus. Comm'n,* 23 Ariz. App. 370, 376, 533 P.2d 678, 684 (1975).

[29] On or about Monday 6/15/15, Roundtree faxed a completed 413 form to Defendants fax at 602.631.2888 at about 9:23AM from 909.861.5412. Roundtree emailed Copper Point claim representative Lucille Moreno and stated "Please state if you received my form 413 today via fax!" Moreno responded, "I have been watching for it. We have not received it." Roundtree subsequently faxed the Form 413, a second time to 602.631.2888 but did not hear from Moreno, then emailed Moreno at about 3:13pm and asked did she receive the faxed form 413. Moreno did not respond.

On or about Tuesday 6/16/15, Moreno emailed Roundtree stating, "I have issued your compensation and it will be mailed out tomorrow. You did not put a 'zero' on your report saying you had not worked. I will be sending your 413 [form] back to you via mail to complete and return or you can re-send your fax to us."

That same day, ALJ Rachel C. Morgan issued her Decision, terminating Roundtree's Benefits. Shortly, after receiving the "incomplete" Form 413, Roundtree noticed the corresponding date and time stamp confirmed it was the first form 413, Roundtree faxed on 6/15/15 at 9:23am, Moreno claimed, she did not receive. Therefore, Moreno presented a pretext to avoid paying due and owing 5/14/15 – 6/15/15 Benefits. Moreno and Copper Point somehow knew ALJ Morgan's decision would be issued on 6/16/15 and more importantly in their favor and all Moreno and Copper Point needed to do was to delay issuing Roundtree's indemnity check to deny his due and owing Benefits. Several times in the past Moreno and other claims representative including Mills and Brown had processed and mailed indemnity Benefits within one day. Although Mills had claimed during an email exchange the process took 3-days which makes Moreno's statement that a check was issued the same day shows the inconsistency of Copper Point claims representatives.

1
2
3
4
5
6
7
8
9
10
11

although not authorized by an ordinance or an express policy, is so permanent and well settled as to constitute a custom or usage with the force of law. That amounts to discrimination against Roundtree, depriving him of his U.S. Constitutional rights to substantive and procedural due process rights to life (bodily integrity), liberty (free from intentional injury to be free in the enjoyment of all his faculties) and property (body as service/negotiable instrument as an elite professional athlete and right to Benefits as an injured Arizona worker under the Act or Roundtree's Claim), under the equal protection clause of 14th Amendment in violation of 42 U.S.C. § 1983, that is shocking to the conscious.

12
13
14
15
16
17

168.   Roundtree further alleges he is a "class of one" and is entitled to and has a legitimate claim of entitlement to Benefits according the Act or Roundtree's Claim and a fundamental right to life, liberty and property, triggering the "danger creation" doctrine.

18
19
20
21

169.   Roundtree further alleges that Copper Point's force of law policy amounts to deliberate indifference to Roundtree's U.S. Constitutional rights and is the moving force behind his U.S. Constitutional violations.

22
23
24
25

170.   Roundtree further alleges his U.S. Constitutional deprivations could have been avoided had the non-defendant Copper Point employees been properly trained or Copper Point corrected its force of law policy of bad faith.

26
27
28

171.   Roundtree further alleges the conduct of non-defendant Copper Point employees was motivated by invidiously discriminatory animus toward Roundtree.

172.   Roundtree further alleges non-defendant Copper Point employees acted with deliberate indifference over the past 22-years causing deprivations of his U.S. Constitutional rights and creating the actual particularized harm that Roundtree would not otherwise have faced including but not limited to: (a) unreasonably delayed, underpaid or failed to pay Benefits; (b) failing to acknowledge and act with reasonableness upon communications with respect to claims arising under policies; (c) refusing to pay claims without conducting a reasonable investigation based upon all available information; (d) failing to affirm or deny coverage within a reasonable time after approval; (e) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (f) compelling insured's to institute litigation to recover benefits due under the policy by offering substantially less than the amount due and owing; (g) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled; (h) failing to promptly settle claims, where liability has become reasonably clear; (i) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; (j) institutes proceedings or interposes a defense that is not well grounded in fact nor warranted by existing law or a good faith argument for extension, modification or reversal of existing law; (k) unreasonably interferes with right to choose attending physician; (l) failing to reimburse travel, medical bills and prescriptions expenses; (m) failure to pay medical, surgical and hospital benefits for

reasonable and necessary diagnostic or investigative tests under A.R.S. § 23-1061(H);

(n) failure to issue a true, accurate chronological copies of the File; (o) failure to issue

timely copies of the File; (p) altering medical records and;[30] (q) loss of use of

Benefits.

173.    Roundtree further alleges as a direct and proximate result of his deprivations of his

U.S. Constitutional rights Roundtree suffered additional damages and harm over the

past 22-years that includes but not limited to: (a) permanent injury to his left foot; (b)

a limp; (c) untreated progression of associated secondary & adaptive changes that

include but not limited to: left ankle, left knee, groin, hips and low back; (d)

embarrassment; (e) humiliation; (f) inconvenience; (g) loss of enjoyment of life; (h)

anger and rage; (i) extreme anxiety over past, present & future injuries and surgeries;

(j) wasted time and effort; (k) shame; (l) extreme anxiety over foot disfigurement and

scars; (m) feelings of failure; (n) loss of self-esteem; (o) loss of peace of mind; (p)

loss of confidence; (q) loss of reputation; (r) extreme depression and sorrow; (s) past,

present and future extreme pain and suffering; (t) loss of ability; (u) past, present &

future medical costs; (v) loss of sleep; (w) past, present & future extreme mental,

emotional and physical sorrow and distress; (x) past, present & future prescription

medicine costs; (y) past, present and future loss of income/wages; (z) past, present

[30] An unknown party tampered with Dr. Edward P. McDermott's medical report of his examination of Roundtree dated 4/6/94. The report has been redacted at page 2 ¶7, specifically deleting Dr. McDermott's percentage of disability relating to Roundtree's industrial injury, most likely to limit Benefit liability and use Dr. Kates as the IME examiner. The Report was directed to Dr. Richard Emerson of the Rattler medical staff located in Phoenix, Arizona.

and future diminished earning capacity; (aa) third party successive negligence under Restatement of Torts § 457; (bb) shorter life expectancy (cc) extreme anxiety in dealing with Copper Point's 22-years in abusing his Claim process; (dd) past and present legal costs of lawsuits regarding injuries; (ee) thoughts of suicide; (ff) past and present Claim costs; (gg) extreme anxiety over excessive third party radiation exposure; (hh) left eye-twitch/tick; (ii) night sweats; (jj) loss of fame and recognition; (kk) confusion and bad decision making past 22-years; (ll) unhealthy weight fluctuations; (mm) extreme anxiety over pending artificial joint replacement surgery of first and second digits; (nn) extreme anxiety over long-term effects of numerous third party documented and undocumented steroidal painkilling injections; (oo) extreme frustration and anguish; (pp) poor quality of life due to pain, discomfort and limp; (qq) loss of use of Benefits; (rr) paranoia that Copper Point hired people to kill Roundtree; (ss) extreme anxiety over the effects pain pills, i.e. liver damage; (tt) loss of use of professional football income; (uu) extreme anxiety over effects of numerous third party x-rays and; (vv) other damages which rendered Roundtree no longer able to engage in his chosen profession as a professional football player, severely affecting Roundtree's use and enjoyment of his faculties, chosen vocations, ability to earn a living, lead a normal life, have normal relationships, raise and care for his children and survive requiring a lifetime of physical, mental and emotional therapy.

174.   Roundtree further alleges non-defendant Copper Point employees provided other similarly situated injured workers with appropriate Benefits according to the Act or their individual claims.

175.   Roundtree further alleges non-defendant Copper Point employees cannot provide a rational basis for treating Roundtree differently, nor can they provide a rational basis for the difference in providing Roundtree his Benefits or concealing medical records or acting in bad faith.

176.   Roundtree further alleges qualified immunity cannot shield non-defendant Copper Point employees from liability because their conduct was purposeful to deprive Roundtree of his right to Benefits and his substantive and procedural due process rights to life, liberty and property under the equal protection clause of 14th Amendment and those rights were established clearly at the time of the non-defendant Copper Point employee's first violation starting as far back as 7/7/93.

177.   Roundtree further alleges equitable tolling doctrine applies to this claim. First, non-defendant Copper Point employees acted purposefully to injure Roundtree breaching their duty then concealed their actions to prevent discovery of a cause of action within the limitations period. Second, Roundtree can argue credibly the extraordinary circumstances of non-defendant Copper Point employees orchestrating a malicious 22-year Workman's Compensation campaign of irrationally different treatment or deliberate indifference to his Constitutional rights to prevent discovery of a cause of action against the individual Medical Defendants was beyond Roundtree's

control. The following additional extraordinary circumstances were also beyond Roundtree's control: (a) the individual Medical Defendants and Rattlers all having the same indemnifier, Copper Point; (b) Copper Point concealing treating physician reports in the File; (c) Copper Point force of law policy denying Roundtree the appropriate Benefits violating his U.S. Constitutional and causing successive injuries to his foot; (d) the injury and acts causing the 1993 injury were difficult to detect; (e) the injury and acts causing the 1989 injury were difficult to detect; (f) the bad faith injuries and acts causing the bad faith injuries were difficult to detect; (h) Copper Point abusing the Workmen's Compensation process since 7/7/93; (i) Copper Point's improper influence over the ALJ Division of the Commission, including but not limited to ALJ Wilson and Chief ALJ Willet,[31] and; (j) Roundtree acting pro se since 1993 on his Claim and in this District since 2012.

---

[31] Copper Point terminated Roundtree's Benefits without a reasonable cause in summer of 1995. Roundtree requested a hearing on or about 8/17/95. ALJ Wilson issued his Notice of Appearance on or about 9/27/95 to Roundtree and Copper Point attorney Gervais Brand. On or about 1/4/96, ALJ Wilson, takes Roundtree's testimony regarding the extent of his industrial injury and his bad faith claims against Copper Point.
ALJ Wilson deflected, Roundtree's testimony that his injury was not stable under with Wilson stating "if [Roundtree] you were not stable Copper Point would not have issued a check for disability." Then ALJ Wilson defelected Roundtree's bad faith claims against non-defendant Copper Point claims representative Lynell Brown under direct questioning that she denied Roundtree's request for an out of state doctor to be Roundtree's treating physician by stating "no out of state doctors will be approved by this carrier" with ALJ Wilson responded she (Brown) did not deny your request for an out of state doctor but meant you had to request it. Later on, ALJ Wilson then stated that he would take Roundtree's bad faith claims under advisement and Roundtree's request for a subpoena for Brown under advisement. But, immediately following the 1/4/96, hearing ALJ Wilson issued a recusal letter stating a conflict of interest. What is more, Chief ALJ, Eileen S. Willett (now a Magistrate Judge in this Honorable District Court) authorized ALJ Wilson's post-hearing conflict of interest transfer that same day to ALJ Walter W.

178.   Roundtree further alleges Copper Point knew they failed in their duty, as early as, 7/7/93, when they used Dr. Michael J. Kates in a scheme, to prevent Roundtree from obtaining his rightful Benefits under the Act or his Claim.

179.   Roundtree further alleges discovery of the File, Commission File, expert medical and insurance witnesses testimony as well as any and all hearing transcripts will yield additional facts sufficient to constitute his cause of action.

180.   Roundtree demands prejudgment interest on this claim since July 7, 1993.

181.   Roundtree demands punitive damages for deprivations of his U.S. Constitutional rights.

Wherefore, Sean Roundtree demands judgment against Copper Point on Count X of his Complaint, in the amount of $500.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**COUNT XI - 42 USC § 1985(3) CONSPIRACY TO DEPRIVE ROUNDTREE**

182.   Roundtree restates and reincorporates by reference each and every allegation

Gallaher. Moreover, both ALJ Wilson and Chief ALJ Willett are former attorneys for Copper Point clearly demonstrating Copper Point's improper influence exerted on the Commission court, affecting the integrity of the court and its ability to function impartially. (See *Apotex Corp v. Merck & Co., Inc.*, 507 F.3d 1357 (7th Cir. 2007). However Copper Point's misconduct did not end there. Copper Point and the Commission later claimed that Roundtree withdrew his bad faith claims but there is no withdrawal request by Roundtree to dismiss his bad faith claims located in the File or Commission File and Roundtree does not recall dismissing his claims. Even assuming Roundtree did allegedly dismiss his bad faith claims against Copper Point, Roundtree was clearly influenced by the misconduct of former Copper Point attorney ALJ Wilson deflection of his claims and his conflict of interest dismissal immediately following the 1/4/96 hearing.

stated in ¶¶1-181 above.

### 42 U.S.C. § 1985(3)

183.   To prevail on a § 1985(3) conspiracy claim, plaintiff must show "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). "A conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." *Ward v. Equal Employment Opportunity Comm'n*, 719 F.2d 311, 314 (9th Cir.1983).

184.   Roundtree alleges in Count XI of his Complaint he is a "class of one" and is entitled to and has a legitimate claim of entitlement to appropriate medical care and Mr. Nesbitt, Dr. Lewicky Dr. Hershey and non-defendant Copper Point employee's through their own individual actions and acts in furtherance of the conspiracy actively strategized under color of state law to deprive Roundtree of his U.S. Constitution rights to substantive and procedural due process rights to life, liberty and property under the equal protection clause of 14th Amendment as well as his right to free speech under the 1st Amendment in violation of 42 U.S.C. §1985(3).

185.   Roundtree further alleges, Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employees, actively strategized together in the common objective of the conspiracy to create the particular danger that exposed Roundtree to deprivations of his U.S. Constitutional rights.

186.   Roundtree further alleges conduct of Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employees was motivated by invidiously discriminatory animus toward Roundtree and as a result Roundtree suffered damages and excruciating pain.

187.   Roundtree further alleges expert medical, psychological, insurance and business witness testimony will yield additional facts sufficient to constitute his cause of action.

188.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count XI of his Complaint, in the amount of $255.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### COUNT XII - 42 U.S.C. § 1986
### ACTION FOR NEGLECT TO PREVENT

189.   Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-188 above.

190.   Roundtree alleges in Count XII of his Complaint Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employee's had knowledge of the wrongs, conspired to be done and neglected to prevent such acts.

191.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr.

Hershey, Sports Medicine and Copper Point on Count XII of his Complaint, in the amount of $100.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

## COUNT XIII – TORTIOUS FRAUDULENT CONCEALMENT OR CONSTRUCTIVE FRAUD

192.    Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-191 above.

### Mr. Nesbitt, Dr. Lewicky, Dr. Hershey And Copper Point, Tortious Fraudulent Concealment Or Constructive Fraud

193.    Roundtree alleges in Count XIII of his Complaint Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, knew they failed in their duty, as early as, August 1989, at the time of failing to provide appropriate conservative care methods or exhaust conservative care methods before deliberately pushing for the surgical removal of the medial sesamoid bone of a 20-year old elite athlete and that Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, would not be performing their duties to Roundtree thereafter.

194.    Roundtree further alleges Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, knowingly used the knowledge, control and superiority of their fiduciary positions to conceal facts of their breaches that would induce Roundtree, vulnerable under their control, care and guidance, to rely on them and Roundtree being ignorant of their breaches, rightly relied on them to his own determent. This is true as Mr.

Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, are the very actors listed behind the breaches, deliberate indifference, negligence, misconduct, misrepresentations and concealments, errors and omissions.

195.   Roundtree further alleges Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, through various acts failed purposefully to fully execute their duties in providing the appropriate medical care to Roundtree's 1989 injury and as a direct and proximate result Roundtree suffered damages.

196.   Roundtree further alleges Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, joint and individual acts to prevent the discovery of a cause of action constitutes a violation under the doctrine of constructive fraud or fraudulent concealment.

197.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count XIII of his Complaint, in the amount of $100.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### Copper Point
### Tortious Fraudulent Concealment Or Constructive Fraud

198.   Roundtree alleges in Count XIII of his Complaint non-defendant Copper Point employees knew they jointly and severally failed in their duty to Roundtree, as early as, 7/7/95, when Dr. Kates, examined Roundtree and did not co-sign the report in a

scheme to limit Roundtree's Benefit liability that Copper Point would not be performing its respective fiduciary duties to Roundtree thereafter.

199.   Roundtree further alleges non-defendant Copper Point employees knowingly used the knowledge, control and superiority of their fiduciary position to induce Roundtree, and others vulnerable under their control, care and guidance, to rely on them and Roundtree and others being ignorant of their breaches, misrepresentations or concealments rightly relied on Copper Point to Roundtree and others own determent. This is true as non-defendant Copper Point employees, Dr. Kates, Brown, Lukaszkiewicz, Mills, Hensley, Moreno and Norton are the very actors listed behind the breaches, deliberate indifference, negligence, misconduct, misrepresentations and concealments, errors and omissions.

200.   Roundtree further alleges non-defendant Copper Point employees failed purposefully to fully execute their duties to Roundtree and others and as a direct and proximate result Roundtree suffered damages.

201.   Roundtree further alleges the acts of non-defendant Copper Point employee's to prevent Roundtree's discovery of a cause of action constitutes a continuing violation under the doctrine of constructive fraud or fraudulent concealment.

202.   Roundtree further alleges discovery of the File, Commission File and any/all hearing transcripts will yield additional facts sufficient to constitute his cause of action.

203.   Roundtree demands prejudgment interest on this claim since July 7, 1993.

Wherefore, Sean Roundtree demands judgment against Copper Point on Count XIII of his Complaint, in the amount of $255.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief that this Honorable Court deems necessary and appropriate.

## COUNT XIV – A.R.S. § 23-1023, THIRD PARTY HARM

204.   Roundtree Sean Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-203 above.

205.   Roundtree alleges in Count XIV of his Complaint that his 1993 industrial injury was the direct and proximate result of Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point, failing to provide the appropriate medical care to Roundtree's 1989 injury, as described throughout this complaint.

206.   Roundtree further alleges a lien on any recovered amount for Benefits provided by non-defendant Rattlers and Defendant Copper Point.

207.   Roundtree further alleges expert medical witness testimony will yield additional facts sufficient to constitute his cause of action.

208.   Roundtree demands prejudgment interest on this claim since May 1993.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count XIV of his Complaint, in the amount of $25.975M to justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**COUNT XV – CIVIL CONSPIRACY**

209.   Roundtree Sean Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-208 above.

210.   Roundtree alleges in Count XV of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employees through their own individual acts conspired together and actively strategized to commit acts in furtherance of the conspiracy to deprive Roundtree of appropriate medical care in 1989 and 1993 as well as prevent Roundtree from receiving the appropriate Benefits of his Claim concealing the knowledge of their individual breaches and those of the conspiracy for the past 26-years to prevent discovery of this cause of action and as a direct and proximate result Roundtree suffered damages.

211.   Roundtree further alleges Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employees acted for their individual advantage and not in their official capacities on behalf of the University or Copper Point.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count XV of his Complaint, in the amount that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

**COUNT XVI – INTENTIONAL OR NEGLIGENT MISREPRESENTATION**

212.   Roundtree Sean Roundtree restates and reincorporates by reference each and every allegation stated in ¶¶1-211 above.

213.   Roundtree alleges in Count XVI of his Complaint Defendants Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and non-defendant Copper Point employee's joint and individual acts of misrepresentation, as described throughout this complaint were intentional or negligent and expected to be acted upon.

214.   Roundtree further alleges expert medical and insurance witness testimony will yield additional facts sufficient to constitute his cause of action.

215.   Roundtree demands prejudgment interest on this claim since August 1989.

Wherefore, Sean Roundtree demands judgment against Mr. Nesbitt, Dr. Lewicky, Dr. Hershey, Sports Medicine and Copper Point on Count XVI of his Complaint, in the amount of $15.975M that will justly compensate him for his damages, together with interest, plus costs and attorney's fees of this action and for any other further relief this Honorable Court deems necessary and appropriate.

### IF EVERY MAN HAS THE RIGHT TO DECIDE HIS OWN DESTINY, THEN THE EVIL MIND OF THE DEFENDANTS CAN BEEN SEEN IN THEIR OUTRAGEOUS, MALICIOUS AND SADISTIC ACTS PLAYING GOD TO CONTROL ROUNDTREE'S

216.   If every man has the right to decide his own destiny, then the evil minds of Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and Copper Point can be seen in their outrageous, malicious and sadistic acts "playing god" to control Roundtree's. If we are a nation under the most High God, YEHWAH and are expected to follow the laws of men, this Honorable Court should severely punish Mr. Nesbitt, Dr. Lewicky, Dr. Hershey and

Copper Point for their conscious and deliberate disregard for Roundtree's physical, mental and emotional health with a record setting national punitive damages award.[32] This punitive damage award must be record setting to deter all current and future health providers across this nation, including all NCAA institutions (especially, Northern Arizona University) and all indemnity companies, (especially, Copper Point) to abide by their duty and the rule of law, no matter their individual personal animus toward any particular student, athlete, worker or patient, not only because it is their duty or the right thing to do in a civilized society, but because the acts of a health provider and insurance company can not only impact the individuals life but the lives of that individuals family as well as unknown generations to come. Without such a deterrent, there will be no sense of justice.

**THE FACTS OF THIS CASE COMPEL THIS HONORABLE COURT'S ADOPTION OF THE STANDARD OF DECISION THAT FAVORS ROUNDTREE**

217.   The facts of this case compel this Honorable Court's adoption of the standard of decision that favors Roundtree, provides fairness to litigants, social acceptability, predictability in future cases and conforms to both Arizona and 9th Circuit precedent that favors deciding cases on their merits.[33] However, a decision for the Defendants

---

[32] Copper Point planned and executed an elaborate scheme to limit Roundtree's Benefit liability as well as underpaid and withheld Roundtree's Benefits, while boasting of more than $3.7 Billion in assets and that it is a debt-free company. (Angela Gonzales, "SCF Arizona Changes Name To Copperpoint Mutual Insurance Company" *Phoenix Business Journal*, Dec. 4, 2013).

[33] Arizona Courts prefer to decide cases on their merits, See *Adams v. Valley Nat'l Bank of Ariz.,* 139 Ariz. 340, 342, 678 P.2d 525, 527 (App.1984) and "Cases should be decided

based on the facts would be wholly unreasonable, facilitate fraud, leave the bar and lower courts in uncertainty & confusion and risk being overturned on appeal.

218.   Roundtree requests this Honorable Court issue an Order stating: (a) Roundtree's complaint is timely; (b) the statutes on all Roundtree's claims are tolled; (c) Roundtree's claims state a claim for relief; (d) Roundtree's §§§ 1983; 1985(3) and; 1986 claims state a claim for relief; (e) the Defendants are estopped from using statute of limitations as a plausible defense; (f) Roundtree's complaint is authorized under 28 U.S.C. § 1915(e)(2); (g) Roundtree's presents facts that satisfies his punitive damage damand and; (h) the parties are to confer in a Scheduling Conference and subsequent Rule 16 Case Management Order.

## IN CONCLUSION

219.   Roundtree demands punitive damages on all applicable claims.

220.   Roundtree demands post-judgment interest on all applicable claims.

221.   Roundtree requests this Honorable Court construe this Complaint in its entirety and consider this Complaint as a unified whole. All paragraphs are reincorporated by this reference.

Respectfully submitted under the pains and penalties of perjury this 8th day of February 2016

Sean A. Roundtree
1080 S. Grand Avenue #C-25
Diamond Bar, CA 91765
602.438.7106/602.592.6401
peaceandrest@live.com

upon their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d at 1472 (9th Cir. 1986).